**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VALVOLINE LLC, VALVOLINE LICENSING AND INTELLECTUAL PROPERTY LLC and VALVOLINE INC., | Civil Action No.: |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. |  |
| VGP HOLDINGS LLC and VGP IPCO LLC, |  |
| Defendants. |  |

Plaintiffs Valvoline LLC, Valvoline Licensing and Intellectual Property LLC, and Valvoline Inc. (collectively "Plaintiffs," "Valvoline" or "VRS"), by and through their undersigned counsel, hereby file suit against Defendants VGP Holdings LLC and VGP IPCo LLC (collectively "Defendants" or "VGP"), and allege as follows:

**NATURE OF THE ACTION**

1.      This is an action for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for breach of contract under the common laws of the State of New York, all arising from Defendants' pervasive unlawful use of the Valvoline Marks, as defined below, in connection with retail vehicle maintenance services in violation of the parties' Brand Agreement, as defined below, and federal and state law.

2.      Defendants have willfully and intentionally ignored the carefully crafted restrictions on use of the Valvoline Marks set forth in the parties' Brand Agreement, choosing

instead to use the Valvoline Marks broadly, including in ways that the Brand Agreement expressly prohibits and that infringe on VRS's trademark rights.

3.    VRS seeks to bring Defendants' misuse of the Valvoline Marks to an end and to obtain injunctive and monetary relief, including specific performance of Defendants' obligations under the operative Brand Agreement and injunctive relief requiring Defendants and Defendants' licensees to cease use of the Valvoline Marks in connection with vehicle preventive maintenance services as proscribed by the Brand Agreement.

## THE PARTIES

4.    Plaintiff Valvoline LLC is a Delaware limited liability company with its principal place of business at 100 Valvoline Way, Suite 100, Lexington, Kentucky 40509.

5.    Plaintiff Valvoline Licensing & Intellectual Property LLC ("VLIP") is a Delaware limited liability company with its principal place of business located at 100 Valvoline Way, Suite 100, Lexington, Kentucky 40509. VLIP is a wholly owned subsidiary of Valvoline LLC.

6.    Plaintiff Valvoline Inc. is a Kentucky corporation with its principal place of business located at 100 Valvoline Way, Suite 100, Lexington, Kentucky 40509.

7.    Upon information and belief, Defendant VGP Holdings LLC is a Delaware limited liability company with its principal place of business located at 100 Valvoline Way, Suite 200, Lexington, Kentucky 40509.

8.    Upon information and belief, Defendant VGP IPCo LLC is a Delaware limited liability company with its principal place of business located at 100 Valvoline Way, Suite 200, Lexington, Kentucky 40509.

## JURISDICTION AND VENUE

9.    This Court has original subject matter jurisdiction over this civil action pursuant to 15 U.S.C. § 1121 (federal trademark question) and 28 U.S.C. § 1331 (federal question), § 1338(a),

(civil action arising under any Act of Congress relating to trademarks), and § 1331(b) (any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the trademark laws) as this case arises under the Lanham Act (15 U.S.C. § 1051, *et seq.*), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over VGP pursuant to the New York long arm statute, CPLR 302 (as applicable to these proceedings under Rule 4 of the Federal Rules of Civil Procedure), and the Fourteenth Amendment of the United States Constitution because VGP  is doing business in and otherwise maintains minimum contacts with the State of New York and because VGP consented to such jurisdiction via the Brand Agreement, defined below, which expressly states that it shall be construed in accordance with the laws of the State of New York and that VGP consents and submits to the jurisdiction of the United States District Court for the Southern District of New York with respect to any suit, action or other proceeding related to or arising out of the Brand Agreement or transactions thereunder, including injunctive relief.

11.     Venue is proper in this district based on the Brand Agreement, defined below, which states that the applicable forum and venue for any dispute arising out of the Brand Agreement are the Supreme Court of the State of New York, New York County, the United States District Court for the Southern District of New York and any appellate courts thereof.

## FACTUAL ALLEGATIONS

### A.     Valvoline's Trademark Rights

12.     Plaintiff Valvoline offers a wide range of vehicle maintenance services throughout the United States.  Valvoline operates and franchises over 1,850 vehicle service centers throughout

North America. Valvoline ranked first among all oil change and preventive automotive maintenance brands in North America by Entrepreneur's 45th Annual Franchise 500®.

13.    Valvoline has provided vehicle maintenance services in the United States using the VALVOLINE brand for more than thirty (30) years and has also provided vehicle maintenance services in the United States using the V logo and design marks for over twenty (20) years.

14.    As a result of its widespread, continuous and exclusive use of the VALVOLINE and V logo and design marks (collectively, the "Valvoline Marks") to identify the source of Valvoline's vehicle maintenance services, Valvoline owns valid and subsisting federal statutory and common law rights to the Valvoline Marks, which have achieved incontestability status under the U.S. Lanham Act.

15.    The Valvoline Marks are distinctive to both the consuming public and Valvoline's trade and are widely recognized in the United States and worldwide as the identifier of Valvoline and its high-quality vehicle maintenance services.

16.    Valvoline's federal registration for VALVOLINE (Reg. No. 3,512,482) is incontestable and serves as conclusive evidence of Valvoline's exclusive rights in the VALVOLINE mark.

17.    Valvoline's federal registrations for the V logo and design marks (Reg. Nos. 2,015,438 and 3,564,645) are incontestable and serve as conclusive evidence of Valvoline's exclusive rights in the V logo and design marks.

18.    Valvoline provides a range of vehicle preventative maintenance services including lubricating chassis, changing motor oil, changing oil and air filters, measuring for proper fluid levels and refilling transmission, differential, power steering, radiator, and windshield washers to

the proper levels, changing windshield wiper blades, testing batteries, and inflating tires to proper pressure at vehicle service centers using the Valvoline Marks throughout the United States.

19.    Valvoline operates, licenses and franchises Valvoline Instant Oil Change ("VIOC") vehicle preventive maintenance services stations, where consumers can bring their vehicles for a range of services that vary by location, including lubricating chassis, changing motor oil, changing oil and air filters, measuring for proper fluid levels and refilling oil, transmission, differential, power steering, radiator, and windshield washers to the proper levels, changing windshield wiper blades, testing batteries, inflating tires to proper pressure, cabin air filter replacement, vehicle light replacement, tire checks, 12 month fuel treatment (fuel additive), tire rotation, emission inspection, courtesy checks, rear differential drain and fill, radiator/coolant flush, battery replacements, safety inspections, front differential drain and fill, transfer case drain and fill, auto transmission drain and fill, diesel fuel filter,  engine flush, 3 month fuel treatment, engine treatment, fuel system cleaning services, battery cleaning services, and air conditioning recharge services.  The VIOC locations prominently feature the Valvoline Marks in connection with these retail vehicle preventive maintenance services.

20.    As a result of its significant investments in the Valvoline Marks, including substantial time, money, and resources marketing, advertising and promoting vehicle maintenance services under the Valvoline Marks throughout the United States, Valvoline has developed a nationwide customer base and considerable goodwill.

**B.    The Brand Agreement**

21.    On March 1, 2023, the Saudi Arabian Oil Company completed the acquisition of Valvoline Inc.'s global products business, VGP.  As part of the transaction, Valvoline and VGP (individually a "Party" and together, the "Parties") entered into a Trademark Co-Existence

Agreement ("Brand Agreement") whereby Valvoline (referred to in the Brand Agreement, and hereinafter, as "VRS") owns the VALVOLINE brand for use in connection with its automotive retail services business and VGP owns the VALVOLINE brand for use in connection with its lubricants products business. Attached hereto as Exhibit A is a true and correct copy of the Brand Agreement.

22.     Pursuant to the Brand Agreement, VRS and VGP agreed upon the division of ownership and use of the Valvoline Marks. Exhibit A.

23.     VRS owns incontestable registrations in full force and effect for the Valvoline Marks (Reg. Nos. 3512482, 2015438, 3564645) for services in Class 37. Attached hereto as Exhibits B-D are true and correct copies of the U.S. trademark registration certificates and current Trademark Status & Document Retrieval ("TSDR") records for U.S. Trademark Reg. Nos. 3512482, 2015438, and 3564645 owned by VRS.

24.     Section 2(a) of the Brand Agreement states, "The Parties acknowledge and agree that, except as expressly set forth herein, VRS will own the Valvoline/V brand in the Retail Services Field of Use and VGP will own the Valvoline/V brand in the VGP Products and Services Field of Use." Exhibit A.

25.     The Brand Agreement defines "Retail Services" to mean "all retail services, including transportation-related retail services, conducted (i) on a business -to -consumer basis, or (ii) solely with respect to vehicle maintenance or care on all modes of ground transportation, on a business-to-business basis, in each case, either directly or through a franchisee, licensee, or business partner, whether previously, now, or hereafter rendered, and all marketing, promotion, and advertising thereof." Exhibit A.

26.    The Brand Agreement defines "VGP Products and Services" to mean "(a) all products, including the Ancillary Products, globally; (b) all services conducted on a business-to-business basis in support of VGP's products globally; (c) solely in China, all Retail Services; and (d) outside North America, all fuel and energy retail services and convenience stores solely to the extent connected to such fuel and energy retail services; in each case (a), (b), (c) and (d), whether previously, now, or hereafter sold or rendered and all marketing, promotion, and advertising thereof." Exhibit A.

27.    Section 2(a) of the Brand Agreement states, "Each Party agrees not to use any Valvoline Mark outside of its Field of Use, except as expressly allowed herein." Exhibit A.

28.    Section 2(b) of the Brand Agreement states, "To the extent that a Party licenses or sublicenses any Valvoline Mark, such Party shall ensure its licensees' compliance with all terms of this Agreement as would be required of such Party." Exhibit A.

29.    Section 5(c) of the Brand Agreement states, "Neither Party shall, nor shall either Party permit its Affiliates to, take, omit to take, or permit any action that will or may tarnish or bring into disrepute the reputation, image, premium nature or prestige of or goodwill associated with the Valvoline Marks." Exhibit A.

30.    Section 5(d) of the Brand Agreement states, "Neither Party shall, nor shall either Party permit its Affiliates to use, apply for, obtain, or assist any Person in applying for or obtaining any registration of any trademark, service mark, trade name, or other indicia confusingly similar to any of the Valvoline Marks in any territory or Field of Use that is outside of that Party's rights pursuant to this Agreement." Exhibit A.

31.     Section 5(e) of the Brand Agreement states, "Each Party shall be responsible to the other Party for all actions or inactions of its licensees, including violations of this Agreement." Exhibit A.

32.     Section 5(g) of the Brand Agreement states, "The Parties agree that they shall, and shall cause their respective Affiliates to (a) use the Valvoline Marks in accordance with all applicable Laws and (b) not use the Valvoline Marks in a manner that would be reasonably expected to significantly damage the goodwill associated with any of the Valvoline Marks or impair either Party's ability to enforce the same."  Exhibit A.

**C.     VGP's Proudly Pouring Program and Misuse of the Valvoline Marks**

33.     Upon information and belief, VGP operates a Proudly Pouring program with vehicle service stations throughout the United States.

34.     Upon information and belief, VGP's Proudly Pouring program grants vehicle service stations that purchase Valvoline products from VGP a license to use the Valvoline Marks to inform consumers that Valvoline products are used at that vehicle service station.

35.     Upon information and belief, VGP provides guidance to its service station licensees on acceptable uses of the Valvoline Marks through its Proudly Pouring – Valvoline Branding Guidelines ("Proudly Pouring Guidelines").

36.     Upon information and belief, VGP's Proudly Pouring Guidelines authorize its service station licensees to prominently feature the Valvoline Marks on freestanding external signage.

37.     Upon information and belief, VGP's Proudly Pouring Guidelines authorize its service station licensees to prominently feature the Valvoline Marks on adjacent external signage.

38.    Upon information and belief, use of the Valvoline Marks by VGP's service station licensees on freestanding external signage and adjacent external signage causes confusion with consumers as to the source of the vehicle maintenance services provided by those service stations.

39.    Upon information and belief, VGP's Proudly Pouring Guidelines also direct its service station licensees to a website at www.proudlypouringstore.com, which markets and sells external signage bearing the Valvoline Marks (the "Proudly Pouring Website").

40.    Upon information and belief, the domain name <proudlypouringstore.com> for the Proudly Pouring Website is registered by Defendant VGP IPCo LLC and is under Defendants' control.

41.    Upon information and belief, Defendants continue to control and maintain the Proudly Pouring Website, which offers external signage for sale that bears the Valvoline Marks in connection with explicit references to Retail Services.  Screenshots of exemplary signage, bearing the Valvoline Marks to promote Retail Services, recently available for purchase on Defendants' Proudly Pouring Website are reproduced below:



### 12' Service Street Banner Kit (Black)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

**REQUEST INFO**   **MORE FROM THIS LINE**

#### Pricing

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity | |
|---|---|
| Price | $169.42 |

**Price Includes:** Complete Kit (Ground Stake)   **ADD TO SHOPPING CART**

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity | |
|---|---|
| Price | $206.47 |

**Price Includes:** Complete Kit (Cross Base)   **ADD TO SHOPPING CART**



### 12' Drive Thru Oil Change Street Banner Kit (White)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

**REQUEST INFO**   **MORE FROM THIS LINE**

#### Pricing

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity | |
|---|---|
| Price | $169.42 |

**Price Includes:** Complete Kit (Ground Stake)   **ADD TO SHOPPING CART**

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity | |
|---|---|
| Price | $206.47 |

**Price Includes:** Complete Kit (Cross Base)   **ADD TO SHOPPING CART**

---

1
https://proudlypouringstore.com/ProductDetails/?productId=554535316&tab=ProductSet&ProdSetIds=127057&referrerPage=Home&refPgId=531248008&referrerModule=PCOLLS (last visited April 1, 2025).

2
https://proudlypouringstore.com/ProductDetails/?productId=554535322&imageId=313492410&tab=Tile&ProdSetIds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).

10



### 12' Stay In Your Car Street Banner Kit (Black)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

[ REQUEST INFO ]   [ MORE FROM THIS LINE ]

⌃ **Pricing**

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity | 🇺🇸 |
|---|---|
| Price | $169.42 |

Price Includes: Complete Kit (Ground Stake)          [ ADD TO SHOPPING CART ]

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity | 🇺🇸 |
|---|---|
| Price | $206.47 |

Price Includes: Complete Kit (Cross Base)          [ ADD TO SHOPPING CART ]

3

### 12' Grand Opening Street Banner Kit (White)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

[ REQUEST INFO ]   [ MORE FROM THIS LINE ]

⌃ **Pricing**

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity | 🇺🇸 |
|---|---|
| Price | $169.42 |

Price Includes: Complete Kit (Ground Stake)          [ ADD TO SHOPPING CART ]

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity | 🇺🇸 |
|---|---|
| Price | $206.47 |

Price Includes: Complete Kit (Cross Base)          [ ADD TO SHOPPING CART ]

4

---

3
https://proudlypouringstore.com/ProductDetails/?productId=554535278&imageId=313493298&tab=Tile&ProdSetIds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).
4 https://proudlypouringstore.com/ProductDetails/?productId=554535320&imageId=313488377&tab=Tile&ProdSetIds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).



Download Image

### 12' Oil Change Street Banner Kit (White)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:**  Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

| REQUEST INFO | MORE FROM THIS LINE |
|---|---|

▲ **Pricing**

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $169.42 |

**Price Includes:**  Complete Kit (Ground Stake)                     ADD TO SHOPPING CART

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $206.47 |

**Price Includes:**  Complete Kit (Cross Base)                     ADD TO SHOPPING CART

5



Download Image

### Oil Change - Replacement Ground Banner Graphic

**SPBK2**

GRAPHICS ONLY - HARDWARE NOT INCLUDED - 23.5" x 33" custom replacement signs for the Spring Sign hardware. Signs are made of 4 mil corrugated polypropylene. Aluminum snap frame flips open on all sides for easy graphic changes. Wind stabilized with 33" steel legs and heavy duty spring system or PE plastic water base that weighs 53lbs. when filled with water & help deflect winds. For indoor or outdoor use.

| REQUEST INFO | MORE FROM THIS LINE |
|---|---|

▲ **Pricing**

**Replacement Graphic**                                                                    SPBK2

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $110.00 |

**Price Includes:**  Two Insert Graphics                     ADD TO SHOPPING CART

6

---

5
https://proudlypouringstore.com/ProductDetails/?productId=554535312&imageId=313488415&tab=Tile&ProdSetIds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).

6
https://proudlypouringstore.com/ProductDetails/?productId=555044900&tab=ProductSet&ProdSetIds=127058&referrerPage=Home&refPgId=531248008&referrerModule=PCOLLS (last visited April 1, 2025).



42. Pursuant to the Brand Agreement, VGP is responsible for the use of the Valvoline Marks by its installer channel licensees.

43. VGP's installer channel licensees are subject to the Field of Use restrictions set forth in the Brand Agreement.

44. VGP's Proudly Pouring Guidelines and the Proudly Pouring Website encourage and instruct VGP's installer channel licensees to use the Valvoline Marks in connection with Retail Services, which are outside of VGP's Field of Use.

45. Numerous VGP installer channel licensees use the Valvoline Marks to promote their vehicle maintenance services, such as oil changes, to consumers, which is outside of VGP's Field of Use.

---

7 https://proudlypouringstore.com/ProductDetails/?productId=554548161&tab=ProductSet&ProdSetIds=127387&referrerPage=Home&refPgId=531248008&referrerModule=PCOLLS (last visited April 1, 2025).

46.    VGP's installer channel licensees are using the Valvoline Marks to promote their vehicle maintenance services, which misleads consumers as to their affiliation with VRS and damages the goodwill and reputation of VRS.

47.    Prominently featuring the Valvoline Marks on freestanding and adjacent exterior signage of VGP's Proudly Pouring installer channel licensees gives the impression to consumers that the service station, including the oil change and vehicle maintenance services it provides, are affiliated with or sponsored by VRS.

48.    Upon information and belief, exemplary photographs of VGP's installer channel service centers across the United States using the Valvoline Marks outside of VGP's Field of Use in violation of the Brand Agreement and VRS's trademark rights are reproduced below:



















49.    VGP is encouraging its installer channel licensees to purchase from VGP's Proudly Pouring Website external signage that bears and uses the Valvoline Marks in connection with generic terms describing retail vehicle maintenance services, which is outside of VGP's Field of Use in violation of the Brand Agreement.

50.    The services provided by VGP's installer channel licensees are not authorized or controlled by VRS.

51.    VRS has been forced to expend resources to resolve issues with VGP's installer channel licensees whose use of the Valvoline Marks is not in compliance with the Brand Agreement or trademark law.

52.    Consumer confidence in the VRS brand in connection with vehicle preventive maintenance service has been and will continue to be damaged, as will the reputation of VRS and its VIOC service stations, if VGP continues to allow its installer channel licensees to use the Valvoline Marks in connection with vehicle maintenance services, which is outside of VGP's Field of Use.

53.     On information and belief, the use of the Valvoline Marks by VGP and its installer channel licensees in connection with Retail Services has negatively impacted VRS's reputation and the goodwill associated with the Valvoline Marks in Retail Services due to the poor quality of vehicle maintenance services provided by VGP's installer channel licensees.

54.     VRS is damaged if/when consumers choose to receive vehicle maintenance services at VGP's installer channel licensees rather than VRS locations under the mistaken belief that they are receiving vehicle maintenance services from VRS.

55.     The use of the Valvoline Marks by VGP's installer channel licensees has resulted in consumer confusion as to the source of the services provided by VGP's installer channel licensees and as to the affiliation of VGP's installer channel customers with VRS.

56.     Consumers have complained that they thought they were at "another" VIOC location when they were in fact at a VGP installer business.

57.     Consumers have reported that the owner of one of VGP's installer channel customers stated his business was a VIOC and that the business would accept VIOC coupons.  The business was not a VIOC.

58.     Customers of a VGP installer channel service center provided negative feedback to VRS regarding the service they received from the VGP installer channel service center after they mistakenly believed they were at a VIOC.

59.     Since the execution of the Brand Agreement, VRS has received numerous complaints and reports from consumers, licensees and franchisees, including VRS's own VIOC locations, of misuse of the Valvoline Marks by installer channel licensees and vehicle maintenance service stations that are affiliated with VGP.

60.     VRS has repeatedly notified VGP of these violations of the Brand Agreement.

61.     Section 5(f) of the Brand Agreement requires each Party to appoint at least one brand ambassador (the "Brand Ambassadors") "to represent its interests in maintaining the integrity and preeminence of the Valvoline Marks." Exhibit A.

62.     Brand Ambassadors and executives from the Parties have engaged in discussions to resolve these matters without success.

63.     VGP has failed to cure the ongoing violations of the Brand Agreement and instead has asked for several exemptions to its obligations under the Brand Agreement.

**D.     VRS's Notice of Breach to VGP**

64.     On July 18, 2024, VRS sent a letter to VGP, formally notifying VGP of its violations of the Brand Agreement, particularly in the context of VGP's Proudly Pouring program and the unauthorize use of the Valvoline Marks by VGP's licensees in the Retail Services Field of Use, and formally demanding VGP comply with the terms of the Brand Agreement and cease its infringement of VRS's trademark rights.

65.     The July 18, 2024, letter from VRS identified several VGP installer channel locations utilizing the Valvoline Marks in connection with Retail Services in violation of the Brand Agreement.

66.     The July 18, 2024, letter noted that VGP's installer channel locations are prominently displaying the Valvoline Marks on both freestanding external signage and adjacent external signage that creates the impression to consumers that these installer channel locations are VIOC service stations or are otherwise sponsored by, affiliated with or associated with VRS.

67.     The July 18, 2024, letter noted that VGP's Proudly Pouring Website was selling promotional materials and signage that create consumer confusion as to the source of services offered by VGP's installer channel licensees utilizing such signage.

68.     On August 9, 2024, VGP responded, stating that it was not in violation of the Brand Agreement but acknowledging VRS's concerns regarding VGP's Proudly Pouring Website and its installer channel customers' use of the Valvoline Marks.

69.     On August 9, 2024, VGP also indicated that it took the Proudly Pouring Website down and put "additional controls" in place to ensure future VGP websites were vetted before going live.

70.     On information and belief, following this exchange of letters, VGP put a "hold" on remediating non-compliant use of the Valvoline Marks by VGP's installer channel customers.

71.     Despite VRS's good faith efforts since July 2024 to resolve this dispute, including participating in several meetings between Brand Ambassadors of both VRS and VGP as well as several meetings between the chief executive officers and chief legal officers of both VRS and VGP, during which VRS requested VGP revise its Proudly Pouring Guidelines to conform with the Brand Agreement and agreed upon Fields of Use, VGP has failed to modify its behavior or the behavior of its installer channel licensees to comply with the Brand Agreement and to respect VRS's trademark rights.

72.     Instead, VGP willfully and intentionally continues to take actions that violate the Brand Agreement and VRS's trademark rights.

73.     On January 27, 2025, Robert Kenny, VGP's Chief Brand & Digital Officer emailed Laura Carpenter, VRS's Senior Vice President and Chief Customer Officer, copying the chief executive officers of both parties and providing updated external signage guidelines (the "External Signage Guidelines") for VGP's installer channel licensees that VGP stated would go into effect on March 1, 2025.

74.     Upon information and belief, VGP intends to permit all installer channel licensees, existing before March 1, 2025, to operate under the prior Proudly Pouring Guidelines.

75.     Upon information and belief, VGP intends for new installer channel licensees, joining the Proudly Pouring program after March 1, 2025, to operate under the proposed External Signage Guidelines, which continue to authorize use of the Valvoline Marks in conjunction with Retail Services.

76.     VGP's proposed changes to the Proudly Pouring Guidelines are immaterial and fail to cure or remedy the ongoing violations of the Brand Agreement and VRS's trademark rights.

77.     Upon information and belief, VGP's External Signage Guidelines allow use of the Valvoline Marks on freestanding signage.

78.     Upon information and belief, VGP's External Signage Guidelines allow use of the Valvoline Marks on storefront and road signs, such as pole or monument signs, to direct traffic to VGP's installer channel licensees, who directly compete with VRS in the vehicle preventative maintenance service field.

79.     Moreover, contrary to VGP's representation on August 9, 2024, that the Proudly Pouring Website had been taken down, on information and belief, VGP continues to control and maintain the Proudly Pouring Website (last visited April 1, 2025), which offers external signage for sale that bears the Valvoline Marks in connection with explicit references to Retail Services. Photographs of exemplary signage recently available for purchase on Defendants' Proudly Pouring Website are reproduced below:



Download Image

### 12' Service Street Banner Kit (Black)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

[ REQUEST INFO ]    [ MORE FROM THIS LINE ]

▲ Pricing

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $169.42 |

**Price Includes:** Complete Kit (Ground Stake)    [ ADD TO SHOPPING CART ]

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $206.47 |

**Price Includes:** Complete Kit (Cross Base)    [ ADD TO SHOPPING CART ]

8



Download Image

### 12' Drive Thru Oil Change Street Banner Kit (White)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

[ REQUEST INFO ]    [ MORE FROM THIS LINE ]

▲ Pricing

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $169.42 |

**Price Includes:** Complete Kit (Ground Stake)    [ ADD TO SHOPPING CART ]

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity 🇺🇸 | 1 |
|---|---|
| Price | $206.47 |

**Price Includes:** Complete Kit (Cross Base)    [ ADD TO SHOPPING CART ]

9

---

8

https://proudlypouringstore.com/ProductDetails/?productId=554535316&tab=ProductSet&ProdSetIds=127057&ref errerPage=Home&refPgId=531248008&referrerModule=PCOLLS (last visited April 1, 2025).

9

https://proudlypouringstore.com/ProductDetails/?productId=554535322&imageId=313492410&tab=Tile&ProdSetI ds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).



Download Image

## 12' Stay In Your Car Street Banner Kit (Black)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

[REQUEST INFO]  [MORE FROM THIS LINE]



∧ Pricing

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity | 1 |
|---|---|
| Price | $169.42 |

**Price Includes:** Complete Kit (Ground Stake)                [ADD TO SHOPPING CART]

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity | 1 |
|---|---|
| Price | $206.47 |

**Price Includes:** Complete Kit (Cross Base)                [ADD TO SHOPPING CART]

10



Download Image

## 12' Oil Change Street Banner Kit (White)

12' Feather Convex Flag with Ground Stake for use in the grass or Cross Base for use on pavement or hard surfaces. Printed with premium UV inks that limit fading. PVC-reinforced tips prevent the pole tip from puncturing the pole sleeve. Lifetime warranty on banner poles and bases. Two-year warranty against fading and manufacturing defects.

**Additional Information:** Double-sided fabric includes a black-out liner in the center and two outer layers using a closed-weave fabric for the print. It reads correctly from both sides.

[REQUEST INFO]  [MORE FROM THIS LINE]



∧ Pricing

**Ground Stake (Grass)**
Product Color: Ground Stake (Grass)

| Quantity | 1 |
|---|---|
| Price | $169.42 |

**Price Includes:** Complete Kit (Ground Stake)                [ADD TO SHOPPING CART]

**Cross Base (Pavement)**
Product Color: Cross Base (Pavement)

| Quantity | 1 |
|---|---|
| Price | $206.47 |

**Price Includes:** Complete Kit (Cross Base)                [ADD TO SHOPPING CART]

11

---

10

https://proudlypouringstore.com/ProductDetails/?productId=554535278&imageId=313493298&tab=Tile&ProdSetI ds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).

11

https://proudlypouringstore.com/ProductDetails/?productId=554535312&imageId=313488415&tab=Tile&ProdSetI ds=127055&referrerPage=ProductResults&refPgId=531248011&referrerModule=PRDREB (last visited April 1, 2025).



80.     VGP has failed to cure the noticed breaches of the Brand Agreement and continues to encourage and authorize its installer channel licensees, through the Proudly Pouring Guidelines, the External Signage Guidelines, and the Proudly Pouring Website, to use the Valvoline Marks in the Retail Services Field of Use in direct contravention of the Brand Agreement and VRS's trademark rights. VRS is compelled to enforce the Brand Agreement and its trademark rights by seeking relief through this Court.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

81.     VRS reasserts, realleges and incorporates by reference all the foregoing allegations as if set forth in full herein.

82.     The Brand Agreement is a valid and enforceable contract under governing New York law.

---

12

https://proudlypouringstore.com/ProductDetails/?productId=554548161&tab=ProductSet&ProdSetIds=127387&referrerPage=Home&refPgId=531248008&referrerModule=PCOLLS (last visited April 1, 2025).

83.    VRS has performed its obligations under the Brand Agreement.

84.    By and through the conduct detailed above, VGP has materially breached and continues to materially breach the Brand Agreement, including, but not limited to, Sections 2(a), 2(b), 5(a), 5(c), 5(d) and 5(g) of the Brand Agreement.

85.    The Brand Agreement defines the Fields of Use in which VRS and VGP, respectively, may exclusively use the Valvoline Marks.  VRS has the exclusive right to use the Valvoline Marks in Retail Services Field of Use in the United States.  Exhibit A § 2(a).  VGP agreed not to use any Valvoline Marks outside of its Field of Use in the United States.  Id.

86.    The Brand Agreement requires the Parties to ensure compliance with all terms of the Brand Agreement by the Parties' respective licensees.  Exhibit A § 2(b).

87.    The Brand Agreement prohibits the Parties from taking any action that will or may tarnish or bring into disrepute the reputation, image, premium nature or prestige of or goodwill associated with the Valvoline Marks.  Exhibit A § 5(c).

88.    The Brand Agreement prohibits both VRS and VGP from permitting their respective Affiliates to use any trademark, service mark, trade name, or other indicia confusingly similar to any of the Valvoline Marks in any territory or Field of Use that is outside of that Party's rights pursuant to this Agreement.  Exhibit A § 5(d).

89.    The Brand Agreement requires the Parties to ensure they and their licensees and Affiliates use the Valvoline Marks in accordance with all applicable laws. Exhibit A §§ 5(e) and 5(g).

90.    VGP has and continues to materially breach Sections 2(a), 2(b), 5(c), 5(d), 5(e) and 5(g) of the Brand Agreement by knowingly and intentionally using, and permitting its installer channel customers to use, the Valvoline Marks in connection with Retail Services in the United

States, which is outside of VGP's permitted Field of Use as defined in the Brand Agreement and also violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.    As a direct and proximate result of VGP's foregoing breaches of the Brand Agreement, VRS has suffered, and will continue to suffer, irreparable harm to its brand reputation in connection with vehicle maintenance services and has suffered and will continue to suffer actual damages, including direct, consequential, and incidental losses and loss profits, in an amount to be proved at trial.

92.    There is no remedy at law adequate to prevent the threatened or actual irreparable harm occasioned by VGP's breach of the Brand Agreement, thereby necessitating the entry of injunctive relief, in addition to any other remedies afforded to VRS in equity or at law.

## SECOND CAUSE OF ACTION
## WILLFUL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114

93.    VRS reasserts, realleges and incorporates by reference all the foregoing allegations as if set forth in full herein.

94.    The Valvoline Marks are registered with the United States Patent & Trademark Office and have become well and favorably known to consumers throughout the United States, as an indication of services emanating from or authorized by a single source.

95.    VRS owns the Valvoline Marks for use in connection with vehicle preventative maintenance services.

96.    VGP's unauthorized use in commerce of the Valvoline Marks in connection with Retail Services as alleged has caused, is likely to cause, and will continue to cause, confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of VGP's and VGP's

licensees' services with VRS, and has caused, is likely to cause, and will continue to cause consumers to believe, contrary to fact, that VGP's and VGP's licensees' services are sold, authorized, endorsed, licensed or sponsored by VRS, or that VGP and VGP's licensees are in some way affiliated with or sponsored by VRS. They are not. VGP's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

97.     Upon information and belief, VGP has committed the foregoing acts of infringement with full knowledge of VRS's exclusive rights in the Valvoline Marks in connection with vehicle maintenance services and with the willful intent to cause confusion and trade on VRS's goodwill.

98.     VGP's acts described herein have injured VRS's business reputation, and goodwill, and unless restrained and enjoined will continue to do so. By reason of VGP's actions, VRS has suffered irreparable harm to its valuable trademarks and service marks and the goodwill associated therewith. As a direct and proximate result of VGP's conduct, VRS has suffered and will continue to suffer damages in an amount to be proved at trial.

99.     VRS has been irreparably harmed and will continue to be irreparably harmed if VGP continues to use, and permit its installer channel licensees to use, the Valvoline Marks outside of their permitted Field of Use as defined in the Brand Agreement.

100.    VGP's infringement of the Valvoline Marks is deliberate, willful, fraudulent, and without any extenuating circumstances and constitutes a knowing use of the Valvoline Marks and an exceptional case within the meaning of 15 U.S.C. § 1117(a).

101.    VRS is entitled to, among other relief, preliminary and permanent injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable

attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### THIRD CAUSE OF ACTION
### FALSE ADVERTISING, FALSE DESIGNATION OF ORIGIN
### AND UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

102.    VRS reasserts, realleges and incorporates by reference all of the foregoing allegations as if set forth in full herein.

103.    VGP's unauthorized use in commerce of the Valvoline Marks as alleged herein is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of VGP's and its licensees' vehicle maintenance services with VRS, and is likely to cause consumers to believe, contrary to fact, that VGP's and its licensees' services are sold, authorized, endorsed, or sponsored by VRS, or that VGP and its licensees are in some way affiliated with or sponsored by VRS.  VGP's and VGP's licensees' use of the Valvoline Marks in the Retail Services Field of Use as defined in the Brand Agreement constitutes a misrepresentation of the nature, characteristics, and qualities of the services offered at Defendants' installer channel businesses.

104.    VGP's acts, alleged herein, constitute false advertising, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

105.    Upon information and belief, VGP's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of VGP and its licensees with VRS. By reason of VGP's willful actions, VRS has suffered irreparable harm to its reputation.  VRS has been and, unless VGP is preliminarily and permanently restrained from their actions, will continue to be irreparably harmed.

106.    VRS is entitled to, among other relief, injunctive relief and an award of actual damages, VGP's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**NEW YORK COMMON LAW TRADEMARK INFRINGEMENT**

107.    VRS reasserts, realleges and incorporates by reference all of the foregoing allegations as if set forth in full herein.

108.    The Valvoline Marks are registered with the United States Patent & Trademark Office and have become well and favorably known to consumers throughout the United States, as an indication of services emanating from or authorized by a single source.

109.    VRS owns the Valvoline Marks for use in connection with vehicle preventative maintenance services.

110.    VGP's unauthorized use in commerce of the Valvoline Marks in the Retail Services Field of Use as alleged has caused, is likely to cause, and will continue to cause, confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of VGP's and VGP's licensees' services with VRS, and has caused, is likely to cause, and will continue to cause consumers to believe, contrary to fact, that VGP's and VGP's licensees' services are sold, authorized, endorsed, licensed or sponsored by VRS, or that VGP and VGP's licensees are in some way affiliated with or sponsored by VRS.  They are not.  VGP's conduct therefore constitutes trademark infringement in violation of the common law of the State of New York.

111.    VGP's acts described herein have injured VRS's business reputation and goodwill, and, unless restrained and enjoined, will continue to do so.  By reason of VGP's actions, VRS has suffered irreparable harm to its valuable trademarks and service marks and the goodwill associated

therewith.  As a direct and proximate result of VGP's conduct, VRS has suffered and will continue to suffer damages in an amount to be proved at trial.

112.    VRS has been irreparably harmed and will continue to be irreparably harmed if VGP continues to use, and permit their channel installers to use, the Valvoline Marks outside of their permitted Field of Use as defined in the Brand Agreement.

113.    VRS is entitled to, among other relief, preliminary and permanent injunctive relief and an award of actual damages, together with prejudgment and post-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Valvoline LLC, Valvoline Licensing and Intellectual Property LLC and Valvoline Inc. demand judgment as follows:

A.    Enter judgment in favor of VRS and against VGP on all counts of the Complaint;

B.    Determine that VGP willfully violated the Lanham Act, and that VGP is liable to VRS for such violations;

C.    Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117;

D.    Determine that VGP materially breached the Brand Agreement, and order specific performance by VGP with the Brand Agreement;

E.    Under all claims for relief, issue a permanent injunction enjoining VGP and any of its officers, employees, agents, successors, representatives, and assigns, and all those in active privity, concert and participation with VGP, including its licensees and Proudly Pouring installer channel partners, and each of them who receives notice directly or otherwise of such injunctions:

    i.    from using in any manner the Valvoline Marks and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the Valvoline Marks, in connection with vehicle maintenance services, so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

ii.     from further unlawfully trading upon and misappropriating the goodwill and reputation of VRS;

iii.    from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts;

iv.    from using the Valvoline Marks in the Retail Services Field of Use in contravention of the Brand Agreement;

v.     from permitting VGP's licensees to use the Valvoline Marks in connection with Retail Services in contravention of the Brand Agreement;

vi.    from operating the Proudly Pouring website, www.proudlypouringstore.com, and offering its installer channel customers signage bearing the Valvoline Marks used in connection with Retail Services in contravention of the Brand Agreement;

vii.   from directly or indirectly infringing VRS's trademark rights in the Valvoline Marks;

viii.  from breaching any aspect of the Brand Agreement; and

ix.    from engaging in further unfair competition and unfair or deceptive acts or practices in connection with the Valvoline Marks.

F.  Order VGP to deliver up for destruction all signage, prints, advertisements, or other materials in its possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the Valvoline Marks, or any variations thereof, in connection with vehicle maintenance services, or which constitute and/or bear any other representation or statement in violation of the injunction herein requested by VRS;

G.  Order VGP to immediately and completely remove all external signage bearing the Valvoline Marks, or any variations thereof, or which constitute and/or bear any other representation or statement in violation of the injunction herein requested by VRS, from its installer channel customers service stations throughout the United States, and that VGP be ordered to provide proof of same;

H.  Order VGP to file with the Court and serve on VRS, within thirty (30) days after service on VGP of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in complete detail the manner and form in which VGP has complied with the injunction;

I.  In accordance with 15 U.S.C. § 1118, order VGP to deliver to VRS, at VGP's expense, for destruction or other disposition, all advertisements and promotional and marketing materials and signage incorporating, bearing, or displaying a trademark confusingly similar to the Valvoline Marks in connection with vehicle maintenance services, or which otherwise violate 15 U.S.C. §§ 1114 and 1125(a), in the possession, custody, or control of VGP or its licensees, as well as any reproduction, counterfeit, copy, or colorable imitation thereof;

J.  Award VRS actual damages it has sustained and/or order that VGP account for and pay over to VRS all of VGP's profits derived from its violation of 15 U.S.C. §§ 1114 and 1125(a) together with legal interest from the date of accrual thereof;

K.  Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that VGP pay over to VRS such additional amounts as the court shall find to be just;

L.  Order VGP to pay VRS reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

M.  Order that VGP provide any and all records necessary to account for and pay over to VRS all gains, profits, and advantages derived from its violation of 15 U.S.C. § 1114, and also pay to VRS the damages which VRS has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

N.  Award interest, including pre-judgment interest on the foregoing sums; and

O.  Award VRS such further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs Valvoline LLC, Valvoline Licensing and Intellectual Property LLC and

Valvoline Inc. hereby demand a trial by jury of all issues so triable.

Dated: New York, New York
         June 27, 2025

**K&L GATES LLP**

*s/ Benjamin Rubinstein*
Benjamin I. Rubinstein, Esq.
benjamin.rubinstein@klgates.com
599 Lexington Avenue
New York, NY 10022
P: 973-848-4140
F: 973-848-4001

R. Gregory Parker, Esq.
greg.parker@klgates.com
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
P: 615-780-6751

*Attorneys for Plaintiffs*
*Valvoline LLC, Valvoline Licensing and Intellectual*
*Property LLC and Valvoline Inc.*