## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

VALVOLINE LLC, VALVOLINE
LICENSING AND INTELLECTUAL
PROPERTY LLC and VALVOLINE INC.,

*Plaintiffs,*

v.

VGP HOLDINGS LLC and VGP IPCO LLC,

*Defendants*.

C.A. No. 1:25-cv-05369-AKH

**JURY TRIAL DEMANDED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM, MOTION TO DECLINE SUPPLEMENTAL
JURISDICTION, AND MOTION TO STRIKE**

## TABLE OF CONTENTS

I.   RELEVANT BACKGROUND ...................................................................................... 2

    A.   VALVOLINE—The Original Motor Oil ........................................................... 2

    B.   The Brand Agreement ....................................................................................... 3

II.  LEGAL STANDARDS ............................................................................................... 4

    A.   Failure to State a Claim – Rule 12(b)(6) .......................................................... 4

    B.   Supplemental Jurisdiction – 28 U.S.C. § 1367(c) ............................................ 5

    C.   Motion to Strike – Rule 12(f) ........................................................................... 6

III. ARGUMENT ............................................................................................................... 6

    A.   Plaintiffs Fail to State a Breach of Contract Claim .......................................... 6

    B.   Plaintiffs' Second, Third, and Fourth Causes of Action for Lanham Act and Related State Law Trademark Claims Sound in Contract, Not Trademark Law, and Should be Dismissed ...................................................................... 12

    C.   Plaintiffs Do Not Allege Any Acts of Direct Trademark Infringement by Defendants and Cannot Sue VGP for Infringement of Rights that VGP Owns ... 15

    D.   Plaintiffs Fail to Plausibly Plead False Advertising ....................................... 20

    E.   The Court Should Decline Supplemental Jurisdiction Over Plaintiffs' State Law Claims .................................................................................................. 21

    F.   Plaintiffs' Demand for Relief Should Be Stricken to The Extent It Seeks Relief Not Permitted by The Brand Agreement ............................................. 22

IV.  CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
   414 F.3d 400 (2d Cir. 2005)...........................................................................................................16

*Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*,
   513 F.2d 1183 (2d Cir. 1975)..........................................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................................5

*Ashwood Cap., Inc. v. OTG Mgmt., Inc.*,
   99 A.D.3d 1, 948 N.Y.S.2d 292 (2012) ...........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................................4, 5

*Car-Freshner Corp. v. Meta Platforms, Inc.*,
   No. 5:22-cv-1305-MAD-ML, 2023 WL 7325109 (N.D.N.Y. Nov. 7, 2023)...........................16

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988).........................................................................................................................6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).............................................................................................................2

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   No. 12 Civ. 7908 (PAE), 2013 WL 2631043 (S.D.N.Y. June 11, 2013)................................22

*Derminer v. Kramer*,
   406 F. Supp. 2d 756 (E.D. Mich. 2005)........................................................................................19

*Doe v. Indyke*,
   457 F. Supp. 3d 278 (S.D.N.Y. 2020).......................................................................................6, 22

*Edwards v. Sequoia Fund, Inc.*,
   938 F.3d 8 (2d Cir. 2019)...............................................................................................................12

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011).....................................................................................6, 7, 9

*Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*,
   22 N.Y.3d 413 (2013) ....................................................................................................................10

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)...........................................................................................................21

*Valencia ex rel. Franco v. Lee*,
    316 F.3d 299 (2d Cir. 2003)..................................................................................22

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)......................................................................................6

*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    530 F. Supp. 3d 447 (S.D.N.Y. 2021).....................................................................8

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020).....................................................................3

*JTH Tax LLC v. AMC Networks Inc.*,
    694 F. Supp. 3d 315 (S.D.N.Y. 2023).....................................................................6

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
    97 F.3d 632 (2d Cir. 1996)......................................................................................7

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
    742 F.3d 42 (2d Cir. 2014)......................................................................................5

*Khurana v. Wahed Inv., LLC*,
    No. 18 Civ. 233 (LAK) (BCM), 2019 WL 1430433 (S.D.N.Y. Feb. 26, 2019).......9

*Kolari v. N.Y.-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)................................................................................6, 21

*La Vigne v. Costco Wholesale Corp.*,
    284 F. Supp. 3d 496 (S.D.N.Y. 2018).....................................................................3

*Lehrman v. Lovo, Inc.*,
    No. 24 Civ. 3770 (JPO), 2025 WL 1902547 (S.D.N.Y. July 10, 2025)................20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..............................................................................................20

*Lopez v. Bonanza.com, Inc.*,
    No. 17 Civ. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019)........16, 17

*Norton v. Town of Brookhaven*,
    No. 22-1015, 2023 WL 3477123 (2d Cir. May 16, 2023).....................................21

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
    830 F.3d 152 (2d Cir. 2016)....................................................................................7

*Pennolino v. Cent. Prods. LLC*,
    No. 22Civ. 5051, 2023 WL 3383034 (S.D.N.Y. May 11, 2023)............................9

*Philadelphia Stock Exch. v. Intl. Sec. Exch., Inc.*,
  No. 05 Civ. 5390 (NRB), 2005 WL 2923519 (S.D.N.Y. Nov. 2, 2005) ................................22

*Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*,
  305 F.Supp.3d 540 (S.D.N.Y. 2018)................................................................................21, 22

*Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*,
  748 F. Supp. 3d 234 (S.D.N.Y. 2024)................................................................................6, 22

*Puri v. Yogi Bhajan Administrative Trust*,
  No. 2:11-cv--9503-FMO (SH), 2015 WL 12684464 (C.D. Cal. Oct. 30, 2015) ....................19

*Reed v. Marshall*,
  699 F. Supp. 3d 563 (S.D. Tex. 2023), No. 4:21-cv-03942, 2024 WL 1468702
  (S.D. Tex. Apr. 4, 2024) ......................................................................................................19

*Rescuecom Corp. v. Google Inc.*,
  562 F.3d 123 (2d Cir. 2009)................................................................................................16

*Silverstar Enters., Inc. v. Aday*,
  537 F. Supp. 236 (S.D.N.Y. 1982) ......................................................................................12

*Stancato v. Versace*,
  94 Civ. 4192 (JFK), 1995 WL 437532 (S.D.N.Y. July 23, 1995) ...........................................13

*Tap Publ'ns, Inc. v. Chinese Yellow Pages (N.Y.) Inc.*,
  925 F. Supp. 212 (S.D.N.Y. 1996) ......................................................................................13

*TechnoMarine SA v. Jacob Time, Inc.*,
  No. 12 Civ. 0790 (KBF), 2012 WL 2497276 (S.D.N.Y. June 22, 2012) ................................16

*Tesla Wall Sys., LLC v. Related Cos., L.P.*,
  No. 17 Civ. 5966 (JSR), 2017 WL 6507110 (S.D.N.Y. Dec. 18, 2017) ................................16

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010)..................................................................................................20

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)................................................................................................20

*Times Mirror Mags., Inc. v. Field & Stream Licenses Co.*,
  103 F. Supp. 2d 711 (S.D.N.Y. 2000)..................................................................................15

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
  277 F.3d 253 (2d Cir. 2002)................................................................................................20

**Statutes**

15 U.S.C. § 1114.............................................................................................................14, 16, 17

15 U.S.C. § 1125......................................................................................................16, 17, 20

15 U.S.C. § 1127............................................................................................................16, 17

28 U.S.C. § 1367...............................................................................................................5, 21

**Other Authorities**

Fed. R. Civ. P. 10(c) ...............................................................................................................5

Rule 12 ..................................................................................................................... *passim*

This case is, at its core, a contract dispute between the owners of the well-known and long-established VALVOLINE trademark. Plaintiffs Valvoline LLC, Valvoline Licensing and Intellectual Property LLC, and Valvoline Inc. ("VRS" or "Plaintiffs") are successors to the services business of the original VALVOLINE oil and lubricants business that is now owned by Defendants—entities comprising Valvoline Global Products ("VGP"). Plaintiffs' breach of contract claim plainly fails because the allegedly breaching activities fall squarely within the unambiguous scope of what is permitted under the Brand Agreement between the parties. In other words, Plaintiffs now seek to achieve through litigation that which they couldn't and didn't at the negotiation table.

Perhaps aware that their breach claim is implausible and will fail, Plaintiffs attempt to pass off the same alleged breach as trademark infringement and false advertising in violation of the Lanham Act and New York common law. But these claims are improper duplicates of the breach of contract claim. Plaintiffs' attempt to repurpose its breach allegations as trademark infringement and false advertising also fails because Plaintiffs do not plausibly allege key elements of these distinct claims. The Court may dismiss all of Plaintiffs' claims under Rule 12(b)(6). To the extent that any state law claims remain, the Court should decline to exercise supplemental jurisdiction over them and dismiss the Complaint in its entirety. Further, to the extent that any claims remain, the Court should strike Plaintiffs' improper requests for VGP's profits, enhanced damages and profits, and fees and costs because Plaintiffs are expressly, contractually barred from obtaining any monetary relief "for anything other than actual, compensatory damages."

## I.    RELEVANT BACKGROUND

Although Plaintiffs' Complaint (Dkt. 1, "Comp.") should be dismissed based purely on the four corners of the Complaint and the incorporated Brand Agreement[1], VGP provides below certain relevant background information to assist the Court in understanding the nature of the relationship between the parties as co-owners of the VALVOLINE brand.

### A.    VALVOLINE—The Original Motor Oil

The VALVOLINE brand traces its origins to 1866, when Dr. John Ellis founded the Continuous Oil Refining Company in Binghamton, New York, and introduced petroleum-based lubricants for steam engines. In 1868, Ellis branded his Binghamton Cylinder Oil as "Valvoline," establishing a name that has been used continuously for over 150 years.

VGP's longstanding rights in the VALVOLINE brand are evidenced by VGP's early federal trademark registrations, including U.S. Trademark Registration No. 53237 for VALVOLINE in connection with lubricating oil products, *registered in 1906* with a first use in commerce dating back to July 1873. Some of Defendants' other trademark registrations for the VALVOLINE mark have filing dates of 1947 (Reg. No. 514070), 1957 (Reg. No. 670453), and

---

[1] Plaintiffs purport to attach "a true and correct copy of the Brand Agreement" as Exhibit A to the Complaint (Dkt. 1-1). However, Dkt. 1-1 is a non-final *draft* of the Brand Agreement between the parties. For example, Section 14(d) of Dkt. 1-1 includes blanks that were later filled in by the parties and does not include the ink signatures that are shown in the fully executed copy. Attached as Exhibit 1 to the Declaration of Ryan C. Steinman is a true and correct copy of the fully executed Brand Agreement including a relevant excerpt from Exhibit E thereto. The Court may rely on Exhibit 1 in deciding this motion because Plaintiffs intended to attach the Brand Agreement to the Complaint and the Brand Agreement is integral to the Complaint in any event. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (the complaint is deemed to include its attachments and documents that are incorporated in it by reference or integral to it; a document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect").

2

1961 (Reg. No. 739915), all of which have obtained incontestable status and confirm Defendants' senior rights over Plaintiffs.[2]

From its inception, VALVOLINE was known as a lubricant product brand. It has been marketed in connection with the taglines "The Original Motor Oil", "We Feature," and, more recently, "Proudly Pouring." In 1986, more than one hundred years after VALVOLINE was first used in commerce in connection with lubricating oil products, Valvoline expanded its business and launched Valvoline Instant Oil Change ("VIOC"), a quick-lube franchise model. In March 2023, Valvoline sold its products business, and with it, its longstanding trademark rights in the VALVOLINE products trademarks.

### B.      The Brand Agreement

As part of the 2023 transaction, the parties entered into the Brand Agreement, formalizing their intent to maintain a "long-term strategic partnership" and confirming they will "co-own" the Valvoline Marks.[3] Ex. 1. Under Section 2(a) of the Brand Agreement, VGP owns the Valvoline Marks in the VGP Products and Services Field of Use, which is defined as, among other things, "***all products***" and "***all services conducted on a business-to-business basis in support of VGP's***

---

[2] The referenced trademark registrations owned by VGP are attached as <u>Exhibit 2</u> to the Steinman Declaration. "Because [a] trademark registration is a matter of public record, the Court [may] take judicial notice of its content." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020); *see also La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 504 (S.D.N.Y. 2018) ("Matters suitable for judicial notice include matters of public record.") (citation omitted), *aff'd*, 772 F. App'x 4 (2d Cir. 2019).

[3] The term "Valvoline Marks" refers to the VALVOLINE word mark and the V logo and design marks. Comp. ¶ 14.

*products globally*," as well as "*all marketing, promotion, and advertising thereof*." Ex. 1 § 1 ("VGP's Products and Services") (emphasis added).[4]

Unfortunately, following the corporate separation, VRS has adopted an increasingly adversarial posture, insisting that it holds unilateral approval rights over VGP's use of the Valvoline Marks—despite that the Brand Agreement does not confer or even reference *any* approval right—while denying that VGP holds any reciprocal rights over VRS's use. These actions mirror control language that VRS tried to include in the Brand Agreement during its negotiation but that were ultimately rejected and not included. VRS now also asserts, by virtue of this lawsuit, that signage it approved years ago as promoting VALVOLINE *products*, as indicated by, for example, the taglines "We Feature" and "Proudly Pouring," violate the Brand Agreement and constitute trademark infringement. But not only do these signs promote VALVOLINE products— which VRS admits in its Complaint—they also comprise one of the many "services conducted on a business-to-business basis in support of VGP's products globally," which fall squarely within VGP's Field of Use in the Brand Agreement.

## II.   LEGAL STANDARDS

### A.   Failure to State a Claim – Rule 12(b)(6)

Rule 12(b)(6) requires dismissal when a complaint fails to state a claim upon which relief can be granted. Fed. Rule Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[4] *See also* Comp. ¶ 26 ("The Brand Agreement defines 'VGP Products and Services' to mean '(a) all products, including the Ancillary Products, globally; (b) all services conducted on a business-to-business basis in support of VGP's products globally; (c) solely in China, all Retail Services; and (d) outside North America, all fuel and energy retail services and convenience stores solely to the extent connected to such fuel and energy retail services; in each case (a), (b), (c) and (d), whether previously, now, or hereafter sold or rendered and all marketing, promotion, and advertising thereof.'").

*Twombly,* 550 U.S. 544, 570 (2007). A claim is not plausible when it relies solely on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Allegations that amount to "naked assertion[s]" devoid of "further factual enhancement" are insufficient. *Id.* at 557. While the court "must take all of the factual allegations in the complaint as true," it is "'not bound to accept as true a legal conclusion couched as a factual allegation'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Where the well-pleaded facts permit only the inference of the mere possibility of misconduct, the complaint has not "nudged [the] claims across the line from conceivable to plausible," and dismissal is appropriate. *Twombly*, 550 U.S. at 570.

"In ruling on a 12(b)(6) motion, ... a court may consider the complaint[,] ... any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, *Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**B.     Supplemental Jurisdiction – 28 U.S.C. § 1367(c)**

Federal courts have original jurisdiction over claims arising under federal law, including those brought under the Lanham Act. When all federal claims are dismissed, the court may decline to exercise supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), which provides that "district courts may decline to exercise supplemental jurisdiction over a claim... if…the district court has dismissed all claims over which it has original jurisdiction." Although the statute is phrased in discretionary terms and there is no "mandatory rule to be applied inflexibly in all cases . . . in the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest"); *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 341 (S.D.N.Y. 2023) (declining to retain jurisdiction over state law claims for trademark dilution and defamation after dismissing Lanham Act claims pursuant to Rule 12(b)(6)).

### C.      Motion to Strike – Rule 12(f)

Rule 12(f) allows a court, *sua sponte* or on motion by a party, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Where a demand for damages is not recoverable as a matter of law…it may be stricken." *Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 245 (S.D.N.Y. 2024); *see also Doe v. Indyke,* 457 F. Supp. 3d 278, 284-85 (S.D.N.Y. 2020) (collecting cases).

### III.    ARGUMENT

### A.      Plaintiffs Fail to State a Breach of Contract Claim

Plaintiffs' First Cause of Action for breach of contract fails to state a claim as a matter of law because VGP's allegedly breaching activities fall within the unambiguous scope of its Field of Use as defined in the Brand Agreement. To state a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). "[S]tating in a conclusory manner that an agreement was

breached does not sustain a claim of breach of contract." *Id.* at 189. "In determining a party's obligations under a contract, 'the initial interpretation of a contract is a matter of law for the court to decide.'" *Id.* (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)). Where the contract's terms are unambiguous, the Court may determine as a matter of law that the defendant's alleged actions do not constitute a failure to perform under the contract and dismiss a breach of contract claim under Rule 12(b)(6). *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156, 160 (2d Cir. 2016) (affirming district court's dismissal of plaintiffs' breach of contract claim with prejudice because "the plain language and structure" of the contract "unambiguously foreclose" plaintiffs' claim).

Plaintiffs' breach claim is centered around VGP's operation of its Proudly Pouring program, which VGP operates "with vehicle service stations throughout the United States." Comp. ¶ 33. Plaintiffs allege that VGP uses, and permits its installer channel customers to use, the Valvoline Marks in connection with Retail Services, which are allegedly outside of VGP's Field of Use as defined in the Brand Agreement. *Id.* ¶ 90. However, Plaintiffs simultaneously allege: "VGP's Proudly Pouring program grants vehicle service stations that purchase Valvoline products from VGP a license to use the Valvoline Marks to inform consumers that Valvoline ***products*** are used at that vehicle service station." *Id.* ¶ 34 (emphasis added). Plaintiffs' allegation must be taken as true for purposes of this Motion and is an ***express admission*** by Plaintiffs that VGP and its licensees' use of the Valvoline Marks fall squarely within VGP's Field of Use.

There is nothing ambiguous about the parties' respective Fields of Use, which are detailed, mutually exclusively, and plainly stated in Sections 1 and 2(a) of the Brand Agreement. Indeed, Plaintiffs do not plead that the Brand Agreement is ambiguous in any respect. Section 2(a) of the Brand Agreement makes clear that VGP "own[s] the Valvoline/V brand in the VGP Products and

Services Field of Use," which includes "all ***products***" and "all services conducted on a business-to-business basis in support of VGP's ***products*** globally." Ex. 1 § 1 (emphasis added). VGP's Field of Use also expressly includes "marketing, promot[ing], and advertising" to support these products and business-to-business services. *Id.* While Plaintiffs allege that VGP breached Sections 2(a), 2(b), 5(c), and 5(d) of the Brand Agreement based on VGP's and its licensees' purported use of the Valvoline Marks in connection with Retail Services,[5] such as oil changes, through the Proudly Pouring Guidelines and VGP's website that markets and sells signage to its licensees at <www.proudlypouringstore.com> (the "Proudly Pouring Website"), all of Plaintiffs' breach allegations are implausible and contradicted by the plain terms of the Brand Agreement. Plaintiffs acknowledge that use of the Valvoline Marks to describe ***products*** (i.e., use within VGP's Field of Use) may also require reference to services as a practical matter, since VGP's licensees must be able to accurately convey to their customers that Valvoline product (i.e., oil) is used as part of licensees' services. Comp. ¶ 34. While services are referenced in these uses accused in the Complaint, namely in signage, it is the Valvoline ***products*** that are being marketed, promoted, and advertised under the Valvoline Marks. Such use is expressly permitted under the agreement. Because Plaintiffs' allegations of breach are contradicted by the unambiguous terms of the Brand Agreement and VGP is merely exercising the rights it owns pursuant to the Brand Agreement, Plaintiffs fail to state a claim for breach of contract. *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021) ("At [the pleadings] stage, the

---

[5] The Brand Agreement defines "Retail Services" to mean "all retail services, including transportation-related retail services, conducted (i) on a business-to-consumer basis, or (ii) solely with respect to vehicle maintenance or care on all modes of ground transportation, on a business-to-business basis, in each case, either directly or through a franchisee, licensee, or business partner, whether previously, now, or hereafter rendered, and all marketing, promotion, and advertising thereof." Comp. ¶ 25; *see also* Ex. 1 § 1.

Court may dismiss a breach of contract claim for failure to state a claim if the plain language of the contract contradicts or fails to support the plaintiff's allegations of breach. (citation and internal quotation marks omitted); *see Pennolino v. Cent. Prods. LLC*, No. 22Civ. 5051 (LJL), 2023 WL 3383034, at *15-16 (S.D.N.Y. May 11, 2023) (dismissing breach of contract claim for failure to state a claim because defendant was exercising a right it had obtained under the contract); *Khurana v. Wahed Inv., LLC*, No. 18 Civ. 233 (LAK) (BCM), 2019 WL 1430433, at *11 (S.D.N.Y. Feb. 26, 2019), *report and recommendation adopted*, No. 18 Civ. 0233 (LAK), 2019 WL 1432589 (S.D.N.Y. Mar. 29, 2019) (dismissing breach claim because plaintiff "failed to plead facts which, accepted as true, would show that [defendant] actually breached the alleged contract").

Plaintiffs' other allegations of breach are similarly belied by the unambiguous scope of VGP's Field of Use under the express terms of the Brand Agreement. The allegation that VGP provides Proudly Pouring Guidelines that authorize its licensees to prominently feature the Valvoline Marks on freestanding external signage and adjacent external signage sold by VGP through its Proudly Pouring Website (Comp. ¶¶ 35-37, 40, 47) does not plausibly allege breach because there is nothing about such signage in the Brand Agreement. Nor do Plaintiffs allege that the Brand Agreement includes terms about external signage. *See Ellington Credit Fund*, 837 F. Supp. 2d at 189-90 (dismissing portion of breach claim based on defendant's alleged failure to "monitor" and "safeguard" trust assets "in the absence of any contractual provisions conferring a specific obligation to 'monitor' and 'safeguard' trust assets"); *see also Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7, 948 N.Y.S.2d 292, 297 (2012) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing . . . ." (alteration in original). Rather, Plaintiffs appear to complain about the business consequences of the Brand Agreement they negotiated

9

without express terms as to *how or where* VGP and its licensees may advertise, market, or promote its VALVOLINE products or business services. Plaintiffs' regret cannot form the basis of a breach claim. *See Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (2013) ("Courts will give effect to the contract's language and the parties must live with the consequences of their agreement.").

The allegation that VGP markets and sells external signage bearing the Valvoline Marks "in connection with explicit references to Retail Services" on the Proudly Pouring Website (Comp. ¶¶ 39, 41) cannot support a plausible breach claim because the signage is plainly "marketing, promot[ing], and advertising" to support products and the sale of such signage is a business-to-business service to support VGP's products. Ex. 1 § 1. And just as there is nothing about external signage in the Brand Agreement as discussed above, there is also nothing in the Brand Agreement that prohibits VGP or its licensees from marketing, promoting, or advertising Valvoline ***products*** while referencing the services for which the Valvoline ***products*** will be used. Indeed, such context is necessary because advertising Valvoline products alone may confuse consumers into believing that Valvoline products are only available to consumers at retail and not understand that they are being used by VGP's licensees. Although Plaintiffs allege that the signage offered by VGP "bear[s] the Valvoline Marks to promote Retail Services" (Comp. ¶ 41), this conclusory allegation is belied by the very examples of signage included in the Complaint. Every example of signage offered on VGP's Proudly Pouring Website displays the PROUDLY POURING mark above the Valvoline Marks. *Id.* ¶¶ 41, 79. Notably, "PROUDLY POURING" is one of the common law marks that was used by Valvoline *before* the 2023 corporate separation to promote its products and expressly acquired by VGP in the Brand Agreement so that it can continue to promote its products in the

same or similar as before the acquisition. Ex. 1 § 11(b)[6] and Exhibit E thereto (list of common law marks that will be owned by VGP).[7] The PROUDLY POURING mark makes clear that the Valvoline Marks are a reference to Valvoline ***products***, such as lubricants, that are used (or *poured*) into customer vehicles. It is VGP's products that are promoted by this signage.[8]

Finally, Plaintiffs' allegations that VGP uses the Valvoline Marks in connection with Retail Services and permits or encourages its licensees to do so through the Proudly Pouring Guidelines and Proudly Pouring Website (Comp. ¶¶ 44-46, 48, 79) are not only foreclosed by Plaintiffs' admission that the signage displayed by VGP's licensees promote ***products*** (*id.* ¶ 34); they are also belied by the examples of purportedly breaching signage shown in the Complaint.[9] Nearly every example shown in paragraph 48 displays the PROUDLY POURING mark or "WE FEATURE" in conjunction with the Valvoline Marks. These are direct references to VGP products.[10]

In sum, all the allegedly breaching activities fall squarely within VGP's Field of Use as defined in the Brand Agreement—or are uses to which the Brand Agreement does not speak and therefore cannot be a breach. VRS seeks to recharacterize VGP's business-to-business product-

---

[6] Section 11(b) of the Brand Agreement is erroneously labeled as a duplicate 11(a) in the version Plaintiffs attached to the Complaint (Dkt. 1-1 § 11(a)).

[7] Exhibit E to the Brand Agreement is part of the "entire agreement" and therefore properly considered on this motion. Ex. 1 § 14(g).

[8] It is also worth noting that Plaintiffs do not even allege that any VGP licensees have ever purchased or used any of the signage shown in paragraphs 41 and 79 of the Complaint.

[9] As an initial matter, and as discussed further below, there is no allegation that VGP *itself* uses the Valvoline Marks in connection with the rendering or sale of Retail Services. All allegations concerning use in connection with Retail Services relate to installer channel licensees. *Infra* § III(C).

[10] The billboard on page 16 of the Complaint also states, "TRUSTED FOR 150 YEARS." This forecloses the possibility that the Valvoline Marks displayed on the billboard could be a reference to Plaintiffs' Retail Services, which were not offered until the late 1980s. *See* Comp. ¶ 13.

support activities and VGP's licensees' promotion of products as "Retail Services" to manufacture a breach. But where, as here, the contract unambiguously forecloses such a reading, dismissal is appropriate at the pleading stage. *See Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12-13 (2d Cir. 2019) (affirming 12(b)(6) dismissal where "the parties' intent is unambiguously conveyed by the plain meaning of the agreements" and plaintiff "failed to plausibly allege a breach").

**B.      Plaintiffs' Second, Third, and Fourth Causes of Action for Lanham Act and Related State Law Trademark Claims Sound in Contract, Not Trademark Law, and Should be Dismissed**

Because the parties are closely related entities bound by a contract that delineates their respective ownership rights in the Valvoline Marks (i.e., the Brand Agreement), this dispute is only properly governed by contract law—not the Lanham Act or state trademark law. Despite pleading trademark causes of action, the central basis for Plaintiffs' Complaint is that "Defendants have willfully and intentionally ignored the carefully crafted restrictions on use of the Valvoline Marks *set forth in the parties' Brand Agreement*." Comp. ¶ 2. Plaintiffs further allege that "VRS seeks to bring Defendants' misuse of the Valvoline Marks to an end and to obtain injunctive and monetary relief, including specific performance of Defendants' obligations *under the operative Brand Agreement* and injunctive relief requiring Defendants and Defendants' licensees to cease use of the Valvoline Marks in connection with vehicle preventive maintenance services *as proscribed by the Brand Agreement*." *Id.* ¶ 3. Because the rights and obligations at issue are defined by contract, and not by trademark law, it is proper for the Court to dismiss the trademark claims.

Federal courts have long held that where a contract governs the use or ownership of a trademark, and the dispute centers on the interpretation or enforcement of that contract, it is the contract and not the Lanham Act that determines the rights of the parties. *See, e.g., Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 236, 241-42 (S.D.N.Y. 1982) (holding that the dispute over use

12

of the trademarks should be resolved under contract law, "as it is the contract that defines the parties' relationship and provides mechanisms to address alleged breaches thereto and [t]he Lanham Act, in contrast, establishes marketplace rules governing the conduct of parties not otherwise limited"); *Stancato v. Versace*, 94 Civ. 4192 (JFK), 1995 WL 437532, at \*3 (S.D.N.Y. July 23, 1995) ("In cases where a contract establishes which party owns a particular trademark, it is the contract and not the Lanham Act that determines the rights of the parties."); *see also Tap Publ'ns, Inc. v. Chinese Yellow Pages (N.Y.) Inc.*, 925 F. Supp. 212, 217 (S.D.N.Y. 1996) ("The mere fact that a trademark was the subject of the contract does not convert a state-law breach of contract issue into a federal Lanham Act claim.").

Here, every material allegation in the Complaint is tethered to the Brand Agreement, which defines the parties' relationship and their respective rights as co-owners of the Valvoline Marks. Plaintiffs confirm this in their jurisdictional allegations, stating that "VGP consented to such jurisdiction via *the Brand Agreement*…with respect to any suit, action or other proceeding related to or arising out of *the Brand Agreement* or transactions thereunder[.]" Comp. ¶ 10. They further allege that "Venue is proper…based on *the Brand Agreement*…which states that the applicable forum and venue for any dispute arising out of *the Brand Agreement*…." *Id.* ¶ 11. Plaintiffs also assert that they "repeatedly notified VGP of these violations of *the Brand Agreement*" and that "VGP has failed to cure the ongoing violations of *the Brand Agreement*." *Id.* ¶¶ 60-63.

Critically, Plaintiffs do not allege any independent trademark infringement claim under the Lanham Act that is unrelated to the Brand Agreement. Rather, they assert that certain conduct— defined solely by the Brand Agreement—would result in a likelihood of confusion. To illustrate, the Second Cause of Action, purportedly for "Willful Trademark Infringement," alleges:

> VGP's unauthorized use in commerce of the Valvoline Marks **in connection with Retail Services** as alleged has caused, is likely to cause, and will continue to cause,

confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of VGP's and VGP's licensees' services with VRS, and has caused, is likely to cause, and will continue to cause consumers to believe, contrary to fact, that VGP's and VGP's licensees' services are sold, authorized, endorsed, licensed or sponsored by VRS, or that VGP and VGP's licensees are in some way affiliated with or sponsored by VRS. They are not.  VGP's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

Comp. ¶ 96 (emphasis added); *see also id.* ¶ 99 (alleging irreparable harm from VGP's use of "the Valvoline Marks outside of their permitted Field of Use as defined in the Brand Agreement").

Plaintiffs' Third Cause of Action, for "False Advertising, False Designation of Origin and Unfair Competition," similarly hinges on the Brand Agreement:

VGP's unauthorized use in commerce of the Valvoline Marks as alleged herein is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of VGP's and its licensees' vehicle maintenance services with VRS, and is likely to cause consumers to believe, contrary to fact, that VGP's and its licensees' services are sold, authorized, endorsed, or sponsored by VRS, or that VGP and its licensees are in some way affiliated with or sponsored by VRS. VGP's **and VGP's licensees' use of the Valvoline Marks in the Retail Services Field of Use as defined in the Brand Agreement** constitutes a misrepresentation of the nature, characteristics, and qualities of the services offered at Defendants' installer channel businesses.

*Id.* ¶ 103 (emphasis added).

Plaintiffs' Fourth Cause of Action, for "New York Common Law Trademark Infringement," also rests on the interpretation of the Brand Agreement:

VGP's unauthorized use in commerce of the Valvoline Marks **in the Retail Services Field of Use** as alleged has caused, is likely to cause, and will continue to cause, confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of VGP's and VGP's licensees' services with VRS, and has caused, is likely to cause, and will continue to cause consumers to believe, contrary to fact, that VGP's and VGP's licensees' services are sold, authorized, endorsed, licensed or sponsored by VRS, or that VGP and VGP's licensees are in some way affiliated with or sponsored by VRS. They are not. VGP's conduct therefore constitutes trademark infringement in violation of the common law of the State of New York.

*Id.* ¶ 110 (emphasis added); *see also id.* ¶ 112 (alleging irreparable harm from VGP's use of "the Valvoline Marks outside of their permitted Field of Use as defined in the Brand Agreement").

14

As shown above, a simple reading of the Complaint makes clear that Plaintiff's Second, Third, and Fourth Causes of Action all arise out of the Brand Agreement. Plaintiffs' claims lie in contract, not trademark, and Plaintiffs' Second, Third, and Fourth Claims for Relief are thus improper and should be dismissed. *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1186 (2d Cir. 1975) (no cause of action for trademark infringement as long as agreement that governed the parties' rights in the mark was active and valid).

Finally, even if there were a likelihood of confusion arising out of VGP's conduct, "the public interest in enforcing contracts outweighs any harm the public might experience due to possible confusion between the parties' products . . ." *Times Mirror Mags., Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 738 (S.D.N.Y. 2000), *aff'd*, 294 F.3d 383 (2d Cir. 2002). The general consumer is not privy to the terms of the Brand Agreement and has no basis to distinguish between the parties' respective uses of the Valvoline Marks, particularly when their uses have been intertwined for decades and remain so closely related. Consumers have long understood VALVOLINE as a unified brand. In short, this is not a case of a brand owner seeking to protect its mark from unauthorized use in the marketplace by a third-party infringer. It is a dispute between co-owners over the interpretation and enforcement of a ***business agreement*** that delineates their respective rights in a well-known brand that has existed for over 150 years.

### C. Plaintiffs Do Not Allege Any Acts of Direct Trademark Infringement by Defendants and Cannot Sue VGP for Infringement of Rights that VGP Owns

The Second, Third, and Fourth Causes of Action should also be dismissed for failure to state a claim because Plaintiffs do not allege any acts of *direct* infringement by VGP. Plaintiffs claim exclusive rights to use the VALVOLINE mark for Retail Services and nowhere in the Complaint do Plaintiffs allege – nor could they – that VGP offers any Retail Services. Simply put: VGP does not provide oil changes or any other vehicle maintenance services.

To plead direct trademark infringement under either 15 U.S.C. § 1114(1) or § 1125(a), Plaintiffs must allege that VGP "used" the Valvoline Marks "in commerce" in connection with the sale, offering for sale, distribution, or advertising of services within Plaintiffs' field of use, and that such use is likely to cause consumer confusion. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).[11] The Second Circuit has emphasized that "use in commerce" in this context requires that the defendant use or display the mark "in the sale or advertising of services and the services are rendered in commerce." *Id.* at 407 (citing 15 U.S.C. § 1127 (defining "use in commerce").[12] Failure to sufficiently plead such "use in commerce" by the defendant warrants dismissal of a direct infringement claim. *See, e.g.*, *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431, at *8, 10 (S.D.N.Y. Sept. 30, 2019) (granting Rule 12(b)(6) motion to dismiss) (explaining that "'[u]se' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark"); *Car-Freshner Corp. v. Meta Platforms, Inc.*, No. 5:22-cv-1305-MAD-ML, 2023 WL 7325109, at *20 (N.D.N.Y. Nov. 7, 2023) (granting Rule 12(b)(6) motion to dismiss direct liability claims where there were no allegations that the defendant "'placed' the infringing marks on any goods"); *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17 Civ. 5966 (JSR), 2017 WL 6507110, at *3 (S.D.N.Y. Dec. 18, 2017) (dismissing

---

[11] The standard for trademark infringement and unfair competition under New York common law is "virtually identical," except that there is an additional requirement of "bad faith" under state law. *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 Civ. 0790 (KBF), 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012).

[12] While a later panel of the Second Circuit appeared to disagree with this in a special appendix to its opinion, the Second Circuit has not overruled *1-800 Contacts*. *See Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 131 (2d Cir. 2009).

16

§ 1125(a)(1)(A) Lanham Act claim because plaintiff made no allegations that defendant used its mark "in commerce" on goods or services as defined in § 1127).

For example, in *Lopez*, the plaintiff asserted the same trademark-related claims as Plaintiffs do here—trademark infringement under 15 U.S.C. § 1114, unfair competition and false designation of origin under 15 U.S.C. § 1125(a), and New York common law trademark infringement and unfair competition. *Lopez*, 2019 WL 5199431 at *3. The court explained that "[w]ith respect to the sale of services, a plaintiff must show that the defendant 'used or displayed [the mark] in the sale or advertising of services and the services are rendered in commerce.'" *Id*. at *8 (second alteration in original). The court then dismissed all of these direct infringement claims because the plaintiff did not contend that the defendants rendered their services in connection with plaintiff's marks; rather, it was apparent from other allegations that it was ***third parties*** who allegedly sold the products under the accused mark and thus were the individuals who satisfied the use in commerce requirement. *Id.* at *9-10.[13]

Here, there are no allegations that VGP itself used the Valvoline Marks "in commerce" in connection with Retail Services. All of the allegations concerning use in commerce of the Valvoline Marks pertain to the conduct of VGP's ***licensees*** who allegedly display signage and otherwise used the Valvoline Marks in connection with ***their own*** vehicle maintenance services. For example:

- Paragraph 38 alleges on information and belief "use of the Valvoline Marks ***by VGP's service station licensees*** on freestanding external signage and adjacent external signage causes confusion. . . .";

---

[13] The plaintiff in *Lopez* also alleged vicarious and contributory infringement, and those claims were dismissed as well for failure to allege specific facts to support the elements of those claims.

17

- Paragraph 45 alleges that "[n]umerous VGP *installer channel licensees* use the Valvoline Marks to promote their vehicle maintenance services, such as oil changes, to consumers . . . .";

- Paragraph 46 alleges that "VGP's *installer channel licensees* are using the Valvoline Marks to promote their vehicle maintenance services….";

- Paragraph 47 alleges that the "signage of VGP's Proudly Pouring *installer channel licensees* gives the impression to consumers that the service station, including the oil change and vehicle maintenance services it provides, are affiliated with or sponsored by VRS";

- Paragraph 48 show photographs of "VGP's *installer channel service centers*";

- Paragraph 50 alleges that "[t]he services provided by VGP's *installer channel licensees* are not authorized or controlled by VRS";

- Paragraph 59 alleges that VRS has received complaints and reports of "misuse of the Valvoline Marks *by installer channel licensees and vehicle maintenance service stations* that are affiliated with VGP."

Comp. ¶¶ 38, 45, 46-48, 50, 59 (emphases added).

There are no allegations that *VGP* uses the Valvoline Marks in connection with VRS's Retail Services (*i.e.*, vehicle maintenance services). Nor could there be—because VGP does not render any Retail Services in the United States or Canada; it (i) sells VALVOLINE branded products; (ii) markets, promotes, and advertises these products; and (iii) renders "business-to-business" services to its installer channel licensees—who use VALVOLINE branded products in the performance of *their* services—in "support of VGP's products globally." Ex. 1 § 1.

18

The activity alleged by VRS, which all stems from signage that depicts "the Valvoline Marks to inform consumers that Valvoline products are used at that vehicle service station" (Comp. ¶ 34), is expressly provided for in the Brand Agreement (*see* Ex. 1 § 1), and thus the Lanham Act-based claims alleged by VRS not only fail due to a lack of use in commerce by VGP but also because "[w]hen parties are co-owners of a mark, one party cannot sue the other for infringement. A co-owner cannot infringe the mark it owns." 2 McCarthy on Trademarks and Unfair Competition § 16:40 (5th ed.). *See also Reed v. Marshall,* 699 F. Supp. 3d 563, 577 (S.D. Tex. 2023), *motion for relief from judgment denied,* No. 4:21-cv-03942, 2024 WL 1468702 (S.D. Tex. Apr. 4, 2024), and *aff'd,* 142 F.4th 338 (5th Cir. 2025) ("Courts asked to consider the rights of co-owners in trademark cases have uniformly held that federal claims for infringement cannot be maintained against co-owners[.]"); *Derminer v. Kramer*, 406 F. Supp. 2d 756, 759 (E.D. Mich. 2005) ("An owner does not infringe upon his co-owner's rights in a trademark by exercising his own right of use."); *Puri v. Yogi Bhajan Administrative Trust,* No. 2:11-cv--9503-FMO (SH), 2015 WL 12684464, at *11 (C.D. Cal. Oct. 30, 2015) ("[A] trademark co-owner does not infringe upon his co-owners rights by exercising his own right of use.").

At most, Plaintiffs allege that VGP granted sublicenses, provided branding guidelines, maintained a website offering signage to installer channel licensees, and encouraged its installer channel licensees to purchase signage from that website. Comp. ¶¶ 34-44, 49. Such allegations, even when treated as true, do not establish that VGP itself engaged in the "use in commerce" necessary for direct liability under the Lanham Act. Further, because VGP's provision of signs to its licensees is within its Field of Use, as explained above, it is only confusion as to the source of the unauthorized services of ***VGP's licensees*** purportedly offered under the Valvoline Marks that could be considered direct infringement.

19

### D.        Plaintiffs Fail to Plausibly Plead False Advertising

Plaintiffs' Third Cause of Action, which apparently alleges false designation of origin (i.e., false association), refers to "false advertising" in the section title and includes a single conclusory allegation that "VGP's acts, alleged herein, constitute false advertising…." Comp. ¶ 104. To the extent Plaintiffs allege a claim for false advertising, it should be dismissed because it is entirely duplicative of their claim for false association[14] and Plaintiffs fail to plead the key element of materiality, among other things.

"A claim of false advertising [under 15 U.S.C. § 1125(a)(1)(B)] may be based on at least one or two theories: that the challenged advertisement is literally false…or that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (cleaned up) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). Under either theory, the plaintiff must "demonstrate that the false or misleading representation involved an inherent or ***material*** quality of the product." *Id.* (emphasis added). And the plaintiff may not maintain a claim for both false advertising under § 1125(a)(1)(B) and false association under § 1112(a)(1)(A) on the same facts.[15] Here, Plaintiffs allege that VGP's use of the Valvoline Marks "is likely to cause confusion"

---

[14] False advertising under § 1125(a)(1)(B) and false association under § 1125(a)(1)(A) are "two distinct bases of liability," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). "The claims are distinct and require and require separate consideration." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 259 (2d Cir. 2002) (citation omitted); 4 McCarthy on Trademarks and Unfair Competition § 27:9.50 (5th ed.) ("A plaintiff cannot disguise a § 43(a)(1)(a) trademark infringement claim as a false advertising § 43(a)(1)(b) claim" because "[t]he two claims are separate and distinct and have different elements needed to assert a prima facie case.").

[15] *See, e.g.*, *Lehrman v. Lovo, Inc.*, No. 24 Civ. 3770 (JPO), 2025 WL 1902547, at *14 (S.D.N.Y. July 10, 2025) (dismissing false advertising claim because allegations of consumer confusion as to defendant's association or partnership with plaintiff were "indistinguishable" from the already-dismissed false association claims).

20

regarding "affiliation, connection, or association" or that the products were "sold, authorized, endorsed, or sponsored by VRS." Comp. ¶ 103. Plaintiffs make no allegations to otherwise support its false advertising claim.

**E.    The Court Should Decline Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

Because Plaintiffs' federal Lanham Act claims are properly dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Plaintiffs allege that the Court has supplemental jurisdiction over their state law claims, namely, their First Cause of Action for breach of contract claim and their Fourth Cause of Action for New York common law trademark infringement, under 28 U.S.C. § 1367(a), because they are "so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution." Comp. ¶ 9. However, as discussed above, both Lanham Act claims (and the New York trademark infringement claim) are fatally deficient.

It is proper for the Court to decline to exercise supplemental jurisdiction over a state claim when—as the Court should do here—"the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, "[t]he Second Circuit counsels *against* exercising supplemental jurisdiction" under these circumstances. *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F.Supp.3d 540, 550 (S.D.N.Y. 2018) (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (explaining the "values of judicial economy, convenience, fairness, and comity" usually "point toward declining to exercise jurisdiction over the remaining state-law claims" when all "federal-law claims are eliminated before trial"); *Norton v. Town of Brookhaven*, No. 22-1015, 2023 WL 3477123 at *4- (2d Cir. May 16, 2023) (same). Courts in this

District routinely deny supplemental jurisdiction upon dismissal of the plaintiff's federal claims, even when not requested by the defendant. *See, e.g.*, *Phoenix Ent.*, 305 F.Supp.3d at 550 (declining to exercise supplemental jurisdiction over remaining state law claims after dismissing Lanham Act claims for failure to state a claim); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) ("[W]here the federal claims had been dismissed at a relatively early stage and the remaining claims involved issues of state law that were unsettled, we have concluded that the exercise of supplemental or pendent jurisdiction was an abuse of discretion."). The Court should similarly decline to exercise supplemental jurisdiction over Plaintiffs' breach of contract and New York trademark infringement claims.

### F.    Plaintiffs' Demand for Relief Should Be Stricken to The Extent It Seeks Relief Not Permitted by The Brand Agreement

This Court should strike Plaintiffs' demands for relief that are unavailable as a matter of law—specifically, any relief other than what is permitted by the Brand Agreement. *See* Comp. at Prayer for Relief. Under Rule 12(f), a court may strike "a demand for damages [that] is not recoverable as a matter of law." *Protex*, 748 F.Supp.2d at 245. For example, courts in this district have struck improper demands for punitive damages, attorneys' fees under the Copyright Act, and relief beyond what is available for a breach of contract claim. *Indyke*, 457 F.Supp.3d at 289 (punitive damages); *Philadelphia Stock Exch. v. Intl. Sec. Exch., Inc.*, No. 05 Civ. 5390 (NRB), 2005 WL 2923519, at *2-3 (S.D.N.Y. Nov. 2, 2005) (attorneys' fees); *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 7908 (PAE), 2013 WL 2631043, at *9 (S.D.N.Y. June 11, 2013) (breach of contract). Here, the Brand Agreement expressly states, "Notwithstanding anything contained in this Agreement, neither Party shall be liable in any arbitration, litigation or other proceeding for anything other than actual, compensatory damages." Ex. 1 § 14(n). This applies to "[a]ny dispute, claim or controversy arising out of or related to this Agreement or breach, termination or validity

22

thereof." *Id*. Plaintiffs' allegations arise entirely out of the Brand Agreement and are thus constrained by the unambiguous terms of the Brand Agreement. This Court should strike Plaintiffs' demands for "anything other than actual, compensatory damages" such as those seeking the extraordinary and contractually barred remedies of Defendants' profits, enhanced damages and profits, attorneys' fees and costs, and interest. *See* Comp. ¶¶ 91, 101, 106, Prayer for Relief (J-N).

## IV.    CONCLUSION

For all the foregoing reasons, the Court should enter an Order dismissing all claims against Defendants VGP Holdings LLC And VGP IPCO LLC.

Dated:  New York, New York
        September 19, 2025

Respectfully submitted,

By: */s/ Kristen A. McCallion*
    Kristen A. McCallion
    Bar No. 4428470
    Ryan C. Steinman
    Bar No. 4794392
    Jenifer Paine
    Bar No. 2850444
    Carl E. Bruce, (*pro hac vice*
    forthcoming)
    TX Bar No. 24036278
    **FISH & RICHARDSON P.C.**
    7 Times Square, 20th Floor
    New York, NY 10036
    Telephone: (212) 765-5070

    **COUNSEL FOR DEFENDANTS**
    **VGP HOLDINGS LLC AND VGP IPCO LLC**

23

## CERTIFICATE OF COMPLIANCE

The Brief for Defendants VGP Holdings LLC and VGP IPCo LLC Deloitte Consulting LLP complies with the type-volume limitation set forth in Local Rule CV-7.1(c). The relevant portions of Defendants' Memorandum of Law In Support of its Motion to Dismiss, including footnotes, contain 7,523 words, as determined by Microsoft Word for Microsoft 365.

*/s/Kristen A. McCallion*
Kristen A. McCallion

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-6.1 on September 19, 2025. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5.2.

*/s/Kristen A. McCallion*
Kristen A. McCallion

24