**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

VALVOLINE LLC, VALVOLINE
LICENSING AND INTELLECTUAL
PROPERTY LLC and VALVOLINE INC.,

                           Plaintiffs,

v.

VGP HOLDINGS LLC and VGP IPCO LLC,

                           Defendants.

Civil Action No.: 1:25-cv-05369-AKH

---

**OPPOSITION OF VALVOLINE LLC, VALVOLINE LICENSING AND
INTELLECTUAL PROPERTY LLC, AND VALVOLINE INC. TO THE MOTION TO
DISMISS, MOTION TO DECLINE SUPPLEMENTAL JURISDICTION, AND MOTION
TO STRIKE OF DEFENDANTS VGP HOLDINGS LLC AND VGP IPCO LLC**

---

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   DEFENDANTS' MOTION TO DISMISS FAILS................................................. 2

III.  LEGAL STANDARDS ........................................................................................ 4

    A.    Failure to State a Claim – Rule 12(b)(6)................................................... 4

    B.    Supplemental Jurisdiction – 28 U.S.C. § 1367 ......................................... 5

    C.    Motion to Strike – Rule 12(f)................................................................... 5

IV.   ARGUMENT....................................................................................................... 6

    A.    Plaintiffs Properly Plead a Breach of Contract Claim .............................. 6

    B.    This Dispute is Properly Governed by both Contract Law and Trademark Law, and Plaintiffs Properly Plead Federal and State Trademark Claims............ 10

    C.    Plaintiffs Properly Plead Direct Trademark Infringement; and Defendants Do Not "Co-Own" Any Rights in the Valvoline Marks in Retail Services.......... 14

        i.    Use in Commerce by Defendants and their Licensees.............................. 14

        ii.   Co-Ownership Principles Do Not Apply Here ......................................... 18

        iii.  In the Alternative, Plaintiffs Should Be Granted Leave to Amend to Plead Contributory Infringement........................................................... 20

    D.    Plaintiffs Properly Plead False Advertising............................................. 21

    E.    The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims................................................................................... 23

    F.    Plaintiffs Prayer for Relief is Proper...................................................... 25

V.    CONCLUSION.................................................................................................. 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
   414 F.3d 400 (2d Cir. 2005)................................................................................................16

*2001Z/15 CPW Realty, LLC v. Lexington Ins. Co.*,
   127 A.D.3d 643, 9 N.Y.S.3d 18 (1st Dept 2015)...................................................................7

*A.S.A.P. Logistics, Ltd. v. UPS Supply Chain Sols., Inc.*,
   629 F. Supp. 3d 42 (E.D.N.Y. 2022) ...................................................................................10

*Ambac Assur. Corp. v. EMC Mortg. Corp.*,
   No. 08-CV-9464(RMB)(MHD), 2009 WL 734073 (S.D.N.Y. Mar. 16, 2009) .......................5

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)................................................................................................10

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)..................................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................4

*Babbit Elecs., Inc. v. Dynascan Corp.*,
   38 F.3d 1161 (11th Cir. 1994) .......................................................................................11, 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................4

*Big League Chew Prop. LLC v. Ford Gum & Machine Co. Inc.*,
   No. 24-CV-11837, 2025 WL 1744894 (N.D. Ill. Apr. 10, 2025) ...........................................15

*Car-Freshner Corp. v. Metal Platforms, Inc.*,
   No. No. 22-CV-1305(MAD)(ML), 2023 WL 7325109 (N.D.N.Y. Nov. 7,
   2023) ....................................................................................................................................17

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*,
   843 F.3d 48 (2d Cir. 2016)..............................................................................................22, 23

*City of New York v. Tavern on the Green Int'l LLC*,
   351 F.Supp.3d 680 (S.D.N.Y. 2018).....................................................................................11

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   No. 12 Civ. 7908 (PAE), 2013 WL 2631043 (S.D.N.Y. June 11, 2013)...............................26

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.*,
   No. 04-CV-2867(BSJ)(HBP), 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ........................21

*Derminer v. Kramer*,
   406 F. Supp. 2d 756 (E.D. Mich. 2005)................................................................................19

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,
   No. 07 Civ. 9580, 2008 WL 4833001 (S.D.N.Y. Nov. 5, 2008) ...............................................6

*Doe v. Indyke*,
   457 F. Supp. 3d 278 (S.D.N.Y. 2020)..................................................................................26

*Dual Groupe, LLC v. Gans-Mex LLC*,
   932 F.Supp.2d 569 (S.D.N.Y 2013)......................................................................................17

*Durango Herald, Inc. v. Riddle*,
   719 F.Supp. 941 (D. Col. 1988)...........................................................................................19

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*,
   90 F.Supp.2d 277 (S.D.N.Y. 2000) ......................................................................................11

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
   637 F.2d 105 (3d Cir. 1980)...........................................................................................11, 26

*Excell Consumer Products Ltd. v. Smart Candle LLC*,
   No. 11-CV-7220(MEA), 2013 WL 4828581 (S.D.N.Y. Sep. 10, 2013) .............................2, 15

*Franchised Stores of N.Y., Inc. v. Winter*,
   394 F.2d 664 (2d Cir. 1968)................................................................................................12

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013).....................................................................................................5

*Gen. Elec. Co. v. Feuz Mfg., Inc.*,
   No. 07-cv-1008, 2008 WL 11355394 (N.D.N.Y. May 15, 2008) ...........................................11

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985)..................................................................................................4

*Gssime v. Nassau Cnty.*,
   No. 09-CV-5581(JS)(ARL), 2014 WL 810876 (E.D.N.Y. Feb. 28, 2014) ...............................5

*Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC*,
   418 F.Supp.2d 501 (S.D.N.Y 2006).....................................................................................15

*Int'l Council of Shopping Center v. Info Quarter, LLC*,
   No. 17-CV-5526, 2018 WL 4284279 (S.D.N.Y. Sep. 7, 2018)......................................2, 5, 11

*Klos v. Polskie Linie Lotnicze*,
   133 F.3d 164 (2d Cir. 1997)..................................................................................................6

*La Quinta Corp. v. Heartland Props. LLC*,
   603 F.3d 327 (6th Cir. 2010) ...............................................................................................14

*Lehrman v. Lovo, Inc.*,
   24-CV-3770(JPO), 2025 WL 1902547 (S.D.N.Y. July 10, 2025)........................................23

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)...........................................................................................6, 25

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   83 F.Supp.3d 501 (S.D.N.Y. 2015) ......................................................................................22

*Lopez v. Bonanza.com, Inc. et al.*,
   No. 17-CV-8493(LAP), 2019 WL 5199431 (S.D.N.Y. Sep. 30, 2019) ..................................17

*Luv N' Care Ltd. v. Toys "R" Us, Inc.*,
   No. 12-CV-0228(SAS), 2012 WL 5265723 (S.D.N.Y. Oct. 24, 2012)..................................20

*Masters v. UHS of Del., Inc.*,
   631 F.3d 464 (8th Cir. 2011) .........................................................................................11, 26

*Merck Eprova AG v. Gnosis S.p.A.*,
   760 F.3d 247 (2d Cir. 2014)..................................................................................................23

*Mizuna, Ltd. v. Crossland Federal Sav. Bank*,
   90 F.3d 650 (2d Cir. 1996)....................................................................................................24

*Monahan v. New York City Dept. of Corrections*,
   214 F.3d 275 (2d Cir. 2000)............................................................................................20, 21

*Morris v. Northrop Grumman Corp.*,
   37 F. Supp. 2d 556 (E.D.N.Y. 1999) .....................................................................................10

*Olin Corp. v. Am. Home Assur. Co.*,
   704 F.3d 89 (2d Cir. 2012)......................................................................................................6

*Philadelphia Stock Exch. v. Intl. Sec. Exch., Inc.*,
   No. 05 Civ. 5390 (NRB), 2005 WL 2923519 (S.D.N.Y. Nov. 2, 2005) ................................26

*Philatelic Foundation v. Kaplan*,
   647 F.Supp. 1344 (S.D.N.Y 1986) ........................................................................................24

*Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*,
   748 F. Supp. 3d 234 (S.D.N.Y. 2024).....................................................................................26

*Purgess v. Sharrock*,
   33 F.3d 134 (2d Cir. 1994)......................................................................................24

*Puri v. Yogi Bhajan Administrative Trust*,
   No. 11-CV-9503(FMO), 2015 WL 12684464 (C.D. Cal. Oct. 30, 2015) ...............................19

*Reed v. Marshall*,
   699 F. Supp.3d 563 (S.D. Tex. 2023) ........................................................................19

*In re Refco Inc. Sec. Litig.*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011).........................................................................6

*Rescuecom Corp. v. Google*,
   562 F.3d 123 (2d Cir 2009)..............................................................................16, 17

*Roe v. City of New York*,
   151 F. Supp. 2d 495 (S.D.N.Y. 2001).......................................................................5, 25

*Rutgerswerke AG and Frendo S.p.A. v. Abex Corp.*,
   No. 93-CV-2914(JFK), 2002 WL 1203836 (S.D.N.Y. June 4, 2002) ...................................7, 9

*Ryan v. Volpone Stamp Co., Inc.*,
   107 F.Supp.2d 369 (S.D.N.Y. 2000)...........................................................................12

*SilverStar Enters., Inc. v. Aday*,
   537 F. Supp. 236 (S.D.N.Y. 1982) .............................................................................13

*Slep-Tone Ent. Corp. v. Kalamata, Inc.*,
   75 F.Supp.3d 898 (N.D. Ill. 2014) .............................................................................21

*State Street Global Advisors Tr. Co. v. Visbal*,
   677 F.Supp.3d 209 (S.D.N.Y. 2023)............................................................................11

*Tesla Wall Sys., LLC v. Related Cos., L.P.*,
   No. 17-CV-5966(JSR), 2017 WL 6507110 (S.D.N.Y. Dec. 18, 2017) ..................................17

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010)......................................................................................22

*Watec Co., Ltd. v. Liu*,
   403 F.3d 645 (9th Cir. 2005) ..............................................................................11, 26

*Zest Anchors, LLC v. Biomet 3i, LLC*,
   No. 23-CV-07232(JLR), 2024 WL 4008164 (S.D.N.Y. Aug. 30, 2024) ..................................7

**Statutes**

15 U.S.C. § 1114.....................................................................................................26

15 U.S.C. § 1116................................................................................................................26

15 U.S.C. § 1117................................................................................................................26

15 U.S.C. § 1118................................................................................................................26

28 U.S.C. § 1367...........................................................................................................5, 24

Copyright Act.....................................................................................................................26

Lanham Act.................................................................................................................. *passim*

New York Child Victims Act ............................................................................................26

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................................................4, 10

Fed. R. Civ. P. 12(f).....................................................................................................5, 25

Fed. R. Civ. P. 15..............................................................................................................20

Fed. R. Civ. P. 15(a) .........................................................................................................20

*McCarthy on Trademarks* § 25:30....................................................................................12

## I.    INTRODUCTION

Plaintiffs Valvoline LLC, Valvoline Licensing and Intellectual Property LLC, and Valvoline Inc. (collectively, "Plaintiffs" or "VRS") respectfully submit this opposition to Defendants VGP Holdings LLC and VGP IPCO LLC's (collectively, "Defendants" or "VGP") Motion to Dismiss (with accompany brief, "MTD").  Defendants' motion seeks to dismiss the Complaint in its entirety.  However, accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs adequately plead trademark infringement, false advertising, and breach of contract claims that are legally and factually plausible, warranting denial of Defendants' motion.

The crux of Plaintiffs' claims lies in Defendants' unauthorized use of Plaintiffs' federally registered trademarks in violation of federal and state trademark law and in contravention of the parties' Brand Agreement[1].  Plaintiffs plead with specificity, providing illustrative examples, that Defendants engaged in pervasive misuse of the Valvoline Marks (defined in the Complaint as the VALVOLINE word mark and the V logo and design), including through Defendants' Proudly Pouring program, which authorizes vehicle service stations to use the Valvoline Marks to promote vehicle-maintenance services in a manner that causes consumer confusion as to the source of those services and infringes upon Plaintiffs' exclusive trademark rights under federal and state law. Plaintiffs also plead with specificity that Defendants violate multiple provisions of the parties' Brand Agreement from their use of the Valvoline Marks outside of Defendants' designated Field of Use (as defined in the Brand Agreement). In short, Plaintiffs plausibly claim that Defendants committed, *inter alia*, two legal wrongs: (1) Defendants used Plaintiffs' registered trademarks

---

[1] Defendants incorrectly state that Exhibit A to the Complaint is a non-final draft of the Brand Agreement.  Exhibit A to the Complaint is a duly-executed (electronically) copy of the *Confidential* Brand Agreement that was redacted for purposes of its public disclosure in Valvoline, Inc.'s securities filings, and the Court may rely on it.

without authorization causing customer confusion in violation of the Lanham Act (and state law), and (2) Defendants went back on their word in breach of the Brand Agreement.  Plaintiffs are entitled to relief for both.

## II.      DEFENDANTS' MOTION TO DISMISS FAILS

Defendants' Motion to Dismiss is predicated on a mischaracterization of the parties' respective rights in the Valvoline Marks, a misinterpretation of the Brand Agreement, and a misapplication of the legal standards governing trademark law.

First, contrary to Defendants' assertions, the parties are not "co-owners" of the Valvoline Marks. [2]  Plaintiffs solely and exclusively own the right to use the Valvoline Marks in connection with vehicle-maintenance *services* in the United States, and Defendants solely and exclusively own the right to use the Valvoline Marks in connection with lubricant oil *products* in the United States.  Compl. ¶¶ 21-22, Ex. A.  This division of rights in the United States is reflected in Plaintiffs' U.S. Trademark Registrations for the Valvoline Marks (Reg. Nos. 3514282, 2015438, and 3564645), which are *service* marks registered in Class 37 for use in connection with vehicle preventive maintenance *services*, Compl. ¶ 23, Exs. B-D, and in Defendants' U.S. Trademark Registrations for the Valvoline Marks (Reg. Nos. 53237, 514070, and 739915), which are trademarks registered in Class 004 for use in connection with lubricating oils and petroleum *products*.  MTD, Ex. 2.  Defendants have no ownership right in, and no right to use, the Valvoline Marks in connection with vehicle-maintenance *services* in the United States.  Compl. ¶¶ 16-17.

---

[2] While the Court may consider the Brand Agreement and take judicial notice of Defendants' U.S. Trademark Registrations, Defendants' self-serving "background" information alleged in Section I of the Motion to Dismiss is not asserted within the four corners of the complaint or the documents attached to the complaint as exhibits and therefore is not properly considered by the Court in deciding the instant motion. *Int'l Council of Shopping Center v. Info Quarter, LLC*, No. 17-CV-5526 (AJN), 2018 WL 4284279, at *2 (S.D.N.Y. Sep. 7, 2018).

2

Second, Defendants grossly misinterpret the terms of the Brand Agreement to erroneously argue the allegedly breaching activities fall within Defendants' Field of Use as defined in the Brand Agreement. The Brand Agreement clearly states that Plaintiffs own the Valvoline Marks in the Retail Services Field of Use (which is vehicle-maintenance services in the United States) and Defendants own the Valvoline Marks in the VGP Products and Services Field of Use (which in the United States is lubricant products). Compl. ¶¶ 25-26, Ex. A. Simply put, Plaintiffs' field of use for the Valvoline Marks is vehicle-maintenance services; Defendants' field of use for the Valvoline Marks is products. The parties expressly agreed not to use the Valvoline Marks outside of their respective Fields of Use (Section 2(a) of the Brand Agreement) and not to allow any of their respective licensees to use the Valvoline Marks outside of their respective Fields of Use (Section 2(b) of the Brand Agreement). Compl. ¶¶ 27-32, Ex. A. Plaintiffs specifically plead that Defendants and their licensees are using the Valvoline Marks in connection with vehicle-maintenance services, providing illustrative examples of the storefront signage Defendants distribute and their licensees display bearing the Valvoline Marks to explicitly promote vehicle-maintenance *services*, not products. Compl. ¶¶ 33-55. Such use of the Valvoline Marks by Defendants and their licensees is not within Defendants' Field of Use and constitutes a clear breach of the Brand Agreement.

Lastly, Defendants misapply the gist-of-the-action doctrine to trademark law to argue Plaintiffs' trademark claims are duplicative of Plaintiffs' breach of contract claim. Contrary to Defendants' motion, the prevailing view is that one who exceeds the scope of a trademark agreement may be liable for both breach of contract and trademark infringement. The Lanham Act provides a distinct legal basis for Plaintiffs' claims, addressing the likelihood of consumer confusion and the protection of federally registered trademark rights, which are separate from the

3

parties' contractual obligations under the Brand Agreement. Defendants and their licensees have used the Valvoline Marks without authorization causing consumer confusion in violation of the Lanham Act (and state law). Defendants and their licensees also have used the Valvoline Marks outside the scope of the Brand Agreement in violation of the terms of the contract. Plaintiffs plausibly plead both.

Considering the foregoing, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

## III. LEGAL STANDARDS

### A. Failure to State a Claim – Rule 12(b)(6)

The legal standards for dismissal under Federal Rule of Civil Procedure 12(b)(6) in the Second Circuit require courts to assess whether a complaint states a claim for relief that is plausible on its face. A complaint is only required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a probability of success on the merits, but rather "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Int'l*

4

*Council of Shopping Centers, Inc.*, 2018 WL 4284279, *1; *see also*, *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 74-75 (2d Cir. 2013). Further, "in resolving a motion to dismiss, review is generally limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Int'l Council of Shopping Centers*, 2018 WL 4284279, *2.

### B.    Supplemental Jurisdiction – 28 U.S.C. § 1367

Under 28 U.S.C. § 1367, federal courts have the authority to exercise supplemental jurisdiction over state law claims that are part of the same case or controversy as claims over which the court has original jurisdiction. The statute is permissive, granting courts discretion to decide whether to retain jurisdiction over state law claims, particularly after the dismissal of federal claims. *See* 28 U.S.C. § 1367(c)(3).

### C.    Motion to Strike – Rule 12(f)

"The court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In general, "motions to strike are disfavored." *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08-CV-9464(RMB)(MHD), 2009 WL 734073, *1 (S.D.N.Y. Mar. 16, 2009). To prevail on a 12(f) motion, the moving party must demonstrate that: "'(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (quoting *Koch v. Dwyer,* No. 98-CV-5519(RPP), 2000 WL 1458803, *1 (S.D.N.Y. Sept. 29, 2000)). A showing of prejudice is a necessary part of a Rule 12(f) motion to strike. *See Gssime v. Nassau Cnty.*, No. 09-CV-5581(JS)(ARL), 2014 WL 810876, *2 (E.D.N.Y. Feb. 28, 2014) (collecting cases).

The Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing," and that a motion to strike should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). The Court must "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008).

## IV.    ARGUMENT

### A.    Plaintiffs Properly Plead a Breach of Contract Claim

Defendants ignore both black-letter law and the plain language of the Complaint in seeking dismissal of Plaintiffs' breach of contract claim. "[A] court must read the complaint as a whole and cannot cherry-pick broad and vague allegations where other parts of the complaint provide the necessary detail." *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 526 (S.D.N.Y. 2011). Yet this is exactly what Defendants' motion, based on a disjunctive reading of the Complaint, urges.

Defendants' motion also argues for an interpretation of the Brand Agreement that is at odds with the explicit language of the agreement itself. "[T]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012). "The fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 168 (2d Cir. 1997). Here, the parties expressed an undeniable intent for Plaintiffs to have exclusive rights to use the marks in retail services. Compl., Ex. A, §§ 1, 2(a). Plaintiffs, in turn, have alleged that Defendants have used the

relevant marks, and/or allowed such marks to be used, in retail services, in violation of the Brand Agreement.

For Defendants to successfully dismiss the breach of contract claim, the contract must unambiguously support their position. *See Zest Anchors, LLC v. Biomet 3i, LLC*, No. 23-CV-07232(JLR), 2024 WL 4008164, *7 (S.D.N.Y. Aug. 30, 2024). It does not. Defendants either mistakenly or disingenuously argue that the Brand Agreement permits the activities alleged in the Complaint because the Brand Agreement permits Defendants' use of the marks in "all products" and "all services conducted on a business-to-business basis in support of [Defendants'] products." MTD at 7. This reading of the Brand Agreement ignores other operative provisions of the contract and, in so doing, impermissibly renders those provisions meaningless. New York law requires that courts "consider the entire contract, not isolated words." *2001Z/15 CPW Realty, LLC v. Lexington Ins. Co.*, 127 A.D.3d 643, 643, 9 N.Y.S.3d 18, 19 (1st Dept 2015). "[U]nder New York law...a court must interpret a contract so as to give effect to all of its clauses and to avoid an interpretation that leaves part of the contract meaningless." *Rutgerswerke AG and Frendo S.p.A. v. Abex Corp.*, No. 93-CV-2914(JFK), 2002 WL 1203836, at *7 (S.D.N.Y. June 4, 2002). When the Brand Agreement and pleadings are reviewed with these principles in mind, Defendants' breach is plain.

Indeed, while Defendants are permitted to use the marks for "products" and "services conducted on a business-to-business basis in support of [Defendants'] products," Plaintiffs retain the exclusive use of the marks for "all retail services, including transportation-related retail services conducted . . . on a business-to-consumer basis." Compl., Ex. A, §§ 1, 2(a). Moreover, Defendants are required under the Brand Agreement to ensure that their licensees use the marks as required by the Brand Agreement. Compl., Ex. A, § 2(b). Defendants fail to do so when

7

Defendants provide their licensees with signage to explicitly market maintenance-related retail services on a business-to-consumer basis.  Compl., ¶¶ 33-49.

While Defendants may be within their rights under the Brand Agreement to provide signage that promotes Defendants' oil products business-to-business to their licensees, Defendants have no right under the Brand Agreement to provide signage to their licensees that promotes maintenance-related retail services directly to consumers.  Interestingly, none of Defendants' signage reproduced in the Complaint makes any mention of any product.  Compl. ¶ 41.  Rather, Defendants' signage bears the Valvoline Marks and explicitly promotes to consumers vehicle-maintenance *services*, which is squarely within Plaintiffs' Retail Services Field of Use, e.g. "SERVICES," "OIL CHANGE," "DRIVE THRU OIL CHANGE," "STAY IN YOUR CAR OIL CHANGE."  Compl. ¶ 41. To interpret the Brand Agreement such that Defendants or their licensees can use the Valvoline Marks to promote vehicle-maintenance services directly to consumers renders the Field of Use definitions meaningless.

The Complaint makes clear Defendants' use of the Valvoline Marks is not limited to "products" and is not limited to "services conduced on a business-to-business basis in support of products."  Plaintiffs allege, among other things, that:

- Defendants' Proudly Pouring program instructs Defendants' licensees to use the marks in connection with Retail Services, and that numerous licensees use the marks "to promote their vehicle-maintenances services, such as oil changes, to consumers...."  Compl. at ¶¶ 44-46.

- Defendants encourage their licensees to purchase signage from Defendants that displays the marks "in connection with generic terms describing retail maintenance services...." for promotion of such services directly to consumers.  Compl. at ¶ 49.

- As a result, consumers were misled to believe Defendants' licensees were Plaintiffs' service centers (which they were not).  Compl. at ¶¶ 56-59.

These allegations, which must be taken as true for purposes of this motion, make clear that Defendants' use of the marks was not limited to "products" or "services in support of products conducted on a business-to-business basis." Rather, Defendants are deliberately using the marks and permitting their licensees to use the marks to promote retail services directly to consumers. This was not a right granted to Defendants in the contract. It was—and remains—a breach of the express terms of the Brand Agreement.

Defendants also argue that Plaintiffs' breach of contract claim is implausible because Plaintiffs allege Defendants misuse the Valvoline Marks on external signage yet "there is nothing about such signage in the Brand Agreement." MTD at 9. This argument implies Defendants can do whatever they want with external signage regardless of whether such signage complies with the Field of Use restrictions in the Brand Agreement—a rather perverse interpretation of the Brand Agreement. Defendants expressly agreed not to use any Valvoline Marks outside of its Field of Use. Compl., Ex. A, § 2(a). Defendants cannot circumvent this contractual obligation by using or providing their licensees with a particular type of signage. Defendants' interpretation of the Brand Agreement to the contrary renders the Field of Use restrictions meaningless. *Rutgerswerke AG*, 2002 WL 1203836, *7 ("[A] court must interpret a contract so as to give effect to all of its clauses and to avoid an interpretation that leaves part of the contract meaningless.").

Defendants further argue that Plaintiffs' well-pleaded facts, grounded in observed usage by Defendants' licensees and experiences of confused customers, are somehow "implausible" because some of the signage identified in the Complaint includes the "PROUDLY POURING" mark. MTD at 10-11. This is nothing more than a thinly veiled attempt to ask the Court to weigh Defendants' contrary view of the facts. Defendants' arguments about the impact of "PROUDLY POURING" and "WE FEATURE" in some of Plaintiffs' illustrative examples are neither dispositive to the

9

plausibility of Plaintiffs' claims nor are they appropriately considered upon a motion to dismiss. Such arguments are factual contentions belied by the Plaintiffs' allegations that customers are in fact confused about the source of the vehicle-maintenance services provided by Defendants' licensees. Moreover, as acknowledged by Defendants, the Complaint includes illustrative examples of unauthorized signage bearing the Valvoline Marks to promote services without "PROUDLY POURING" or "WE FEATURE". MTD at 11 ("Nearly every example…").

"It is not the Court's function to weigh the evidence that might be presented at trial." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Rather, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have "alleged facts [that] allow the court to draw a reasonable inference of defendant's liability for the alleged" breach of contract. *A.S.A.P. Logistics, Ltd. v. UPS Supply Chain Sols., Inc.*, 629 F. Supp. 3d 42, 45 (E.D.N.Y. 2022). To the extent Defendants' motion argues its own view of the facts alleged, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). On a motion to dismiss, a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.* Accordingly, Defendants' Motion to Dismiss Plaintiffs' breach of contract claim must be denied.

**B.    This Dispute is Properly Governed by both Contract Law and Trademark Law, and Plaintiffs Properly Plead Federal and State Trademark Claims**

Defendants contend this dispute is properly governed only by contract law, effectively asking this Court to apply the gist-of-the-action doctrine to trademark law. *See* MTD, III.B. While the gist-of-the-action doctrine forbids tort claims that are contract claims dressed up to look like a tort, no court of appeals has extended the doctrine to trademark claims. On the contrary, trademark

10

owners routinely recover damages for both trademark infringement and breach of contract even when the claims overlap. *See Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 123 (3d Cir. 1980); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 470–71 (8th Cir. 2011); *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 651–52 (9th Cir. 2005); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1178 (11th Cir. 1994).

The Second Circuit and district courts within its jurisdiction, including the Southern District of New York, have consistently held that trademark claims can coexist with breach of contract claims when the defendant uses a mark outside the scope of the contract in a manner that has caused or is likely to cause consumer confusion. *See, e.g.*, *Gen. Elec. Co. v. Feuz Mfg., Inc.*, No. 07-cv-1008, 2008 WL 11355394, at *3–4 (N.D.N.Y. May 15, 2008) (noting that courts have "repeatedly maintained Lanham Act claims alongside breach of contract claims," and holding GE may enforce its contract while also maintaining its Lanham Act claim, which is meant "to prevent customer confusion regarding a product's source or sponsorship"); s*ee also State Street Global Advisors Tr. Co. v. Visbal,* 677 F.Supp.3d 209, 265–266 (S.D.N.Y. 2023) (finding the Lanham Act claim was not impermissibly duplicative of breach of contract claims because allegations went beyond the scope of the agreement and speak to customer confusion); *City of New York v. Tavern on the Green Int'l LLC*, 351 F.Supp.3d 680, 697 (S.D.N.Y. 2018) (finding the plaintiff was entitled to summary judgment as to liability on its breach of contract claim and its trademark infringement claim); *Int'l Council of Shopping Centers*, 2018 WL 4284279, at *7 (denying the defendant's motion to dismiss the plaintiff's breach of contract and trademark infringement claims); *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F.Supp.2d 277, 307 (S.D.N.Y. 2000) (finding the defendant "violated both the Lanham Act…and his contract"); *Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369 (S.D.N.Y. 2000). Here, the rights and obligations of the parties are properly

11

governed by trademark law and by contract, and Plaintiffs sufficiently plead causes of action for both.

Under trademark law, Plaintiffs plead that they exclusively own all right, title and interest in and to three federally registered service marks, the Valvoline Marks, for use in connection with vehicle-maintenance services (Class 37). Compl. ¶¶ 12-20, Exs. B-D. Plaintiffs specifically allege Defendants are using, and authorizing their licensees to use, the Valvoline Marks to promote vehicle-maintenance services. Compl. ¶¶ 33-41, 45-57. Plaintiffs include illustrative examples of Defendants' service center licensees using the Valvoline Marks to promote vehicle-maintenance services. Compl. ¶ 48 (photographs). Plaintiffs also include illustrative examples of Defendants providing signage bearing the Valvoline Marks and explicitly promoting vehicle-maintenance services (e.g., OIL CHANGE, SERVICE, DRIVE THRU OIL CHANGE, STAY IN YOUR CAR OIL CHANGE) to Defendants' licensees. Compl. ¶ 41 (screenshots). Plaintiffs allege that such use of the Valvoline Marks by Defendants and their licensees is without the consent of Plaintiffs. Compl. ¶¶ 33-41, 45-57. Plaintiffs also allege that such use of the Valvoline Marks by Defendants and their licensees to promote vehicle-maintenance services to consumers has caused, and is likely to cause, consumer confusion, and has damaged Plaintiffs. Compl. ¶¶ 38, 52-58. To summarize, Plaintiffs thoroughly plead facts demonstrating unauthorized use of Plaintiffs' federally registered service marks by Defendants and their licensees to promote vehicle-maintenance services resulting in consumer confusion, which falls outside the scope of the Brand Agreement and is therefore actionable as trademark infringement under federal and state law. *See Franchised Stores of N.Y., Inc. v. Winter*, 394 F.2d 664, 668 (2d Cir. 1968); *accord McCarthy on Trademarks* § 25:30; *cf. SilverStar Enters., Inc. v. Aday*, 537 F. Supp. 236, 241 (S.D.N.Y. 1982) (dismissing a Lanham Act

12

claim as duplicative of a contract claim because "it appear[ed] that. . .no confusion [would] result" from the defendant's alleged misuse of the trademark).

Under contract law, Plaintiffs specifically plead that Defendants agreed to certain terms of use and obligations with respect to the Valvoline brand, and Defendants have not complied with such terms.  Compl. ¶¶ 21-32, 35-63.  For example, Plaintiffs plead that Defendants agreed to the following terms of use of the Valvoline brand:

- Section 2(a) of the Brand Agreement states, "Each Party agrees not to use any Valvoline Mark outside of its Field of Use, except as expressly allowed herein." Compl. ¶ 28, Ex. A.

- Section 2(b) of the Brand Agreement states, "To the extent that a Party licenses or sublicenses any Valvoline Mark, such Party shall ensure its licensees' compliance with all terms of this Agreement as would be required of such Party."  Compl. ¶ 29, Ex. A.

- Section 5(e) of the Brand Agreement states, "Each Party shall be responsible to the other Party for all actions or inactions of its licensees, including violations of this Agreement."  Compl. ¶ 31, Ex. A.

Plaintiffs provide illustrative examples that Defendants and their licensees are using the Valvoline Marks outside of Defendants' Field of Use and squarely within Plaintiffs' Retail Services Field of Use.  Compl. ¶¶ 39-49.  Plaintiffs plead that they have repeatedly notified Defendants of these violations of the Brand Agreement by Defendants and their licensees.  Compl. ¶¶ 60, 64-67. Finally, Plaintiffs plead that Defendants have not cured these ongoing violations of the Brand Agreement.  Compl. ¶¶ 63, 68-79.  Defendants' failure to comply (and to ensure the compliance of their licensees) with the terms of the Brand Agreement is an actionable breach of contract, separate and distinct from the consumer confusion caused by Defendants' and their licensees use of Plaintiffs' trademarks outside the scope of the Brand Agreement.

Thus, Plaintiffs allege not only that Defendants and their licensees have failed to comply with the terms of the Brand Agreement, Plaintiffs also allege that Defendants and their licensees

are using the Valvoline Marks in a manner that has caused and is likely to cause confusion as to the source of retail services provided by Defendants' licensees.  The latter allegations go beyond the scope of the Brand Agreement, which governs the parties' rights to use the Valvoline Marks in specific Fields of Use, and speaks instead to the misrepresentation to customers—that Defendants and their licensees are authorized to provide retail services to customers under the Valvoline Marks—and the resulting customer confusion, which is the central issue of a Lanham Act claim.  Defendants have committed two legal wrongs: (1) Defendants and their licensees have caused customer confusion and engaged in unfair competition in violation of the Lanham Act by using Plaintiffs' registered service marks to promote vehicle-maintenance services without authorization; and (2) Defendants have gone back on their word and violated the terms of the Brand Agreement in breach of contract by failing to comply, and to ensure the compliance of its licensees, with the terms of the Brand Agreement.  Plaintiffs are entitled to recover for both wrongs.  *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 345 (6th Cir. 2010).

Accordingly, Plaintiffs' trademark claims under federal and state law are not impermissibly duplicative of Plaintiffs' breach of contract claims, and Defendants Motion to Dismiss Plaintiffs' trademark claims should be denied.

### C.    Plaintiffs Properly Plead Direct Trademark Infringement; and Defendants Do Not "Co-Own" Any Rights in the Valvoline Marks in Retail Services

Defendants argue that Plaintiffs' Second, Third and Fourth causes of action should be dismissed because (i) Plaintiffs have not sufficiently plead "use in commerce" by Defendants, and (ii) a co-owner cannot infringe the mark it owns.  Both arguments fail.

#### i.    Use in Commerce by Defendants and their Licensees

First, Plaintiffs sufficiently plead that Defendants have used Plaintiffs' marks in commerce in violation of the Lanham Act.  The Lanham Act does not require a defendant to use the mark

14

itself for a claim under the Lanham Act to accrue. "As a general rule, a licensee's use of a trademark inures to the benefit of the licensor." *Excell Consumer Products Ltd. v. Smart Candle LLC*, No. 11-CV-7220(MEA), 2013 WL 4828581, *11 (S.D.N.Y. Sep. 10, 2013); *see also Big League Chew Prop. LLC v. Ford Gum & Machine Co. Inc.*, No. 24-CV-11837, 2025 WL 1744894, *6 (N.D. Ill. Apr. 10, 2025) (quoting *Slep-Tone Ent. Corp. v. Kalamata, Inc.,* 75 F.Supp.3d 898, 905 (N.D. Ill. 2014)) ("Rather, 'the law is clear that the 'use in commerce' requirement may be satisfied through use of the trademark by controlled licensees[.]'"). Courts in this jurisdiction are clear that "[u]se of the mark by a licensee to identify or distinguish goods is sufficient to create enforceable rights." *Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC*, 418 F.Supp.2d 501, 506 (S.D.N.Y 2006) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18.46 (4th ed. 2004)) ("'Ownership rights in a trademark...can be acquired and maintained through the use of the mark by a controlled licensee'").

For a licensee's use of a mark to inure to the benefit (or in this case detriment) of the licensor, the licensor "is required to exercise some degree of control over the use of the mark by the licensee." *Hawaii-Pacific Apparel Group, Inc.*, 418 F.Supp.2d at 506 (holding the party's "licensing of the mark was sufficient as a matter of law to establish priority of use" because the licensees were required to sign lengthy licensing agreements which required the licensees to submit samples to the licensors for approval).

Plaintiffs plead that Defendants have engaged in pervasive misuse of the Valvoline Marks through their Proudly Pouring program, which authorizes service stations licensees to use the Valvoline Marks to promote vehicle-maintenance services in a manner that causes consumer confusion as to the source of those services. Compl. ¶¶ 33-50. Plaintiffs plead that Defendants provide guidance to their service station licensees on acceptable uses of the Valvoline Marks

15

through its Proudly Pouring – Valvoline Branding Guidelines. Compl. ¶ 35. Plaintiffs plead that Defendants authorize their licensees to prominently feature the Valvoline Marks on external signage, including signage that features the Valvoline Marks in connection with explicit references to vehicle-maintenance *services* that Defendants provide through the Proudly Pouring Website. Compl. ¶¶ 36-41. Plaintiffs include reproductions of Defendants' external signage that make no mention of products, but rather expressly promote vehicle-maintenance *services* in connection with the Valvoline Marks. Compl. ¶ 41. Plaintiffs also provide photographic evidence of Defendants' licensees using the Valvoline Marks to explicitly promote "oil changes" and "auto care" services. Compl. ¶¶ 47-48. Plaintiffs further plead that such use of the Valvoline Marks by Defendants and their licensees to promote vehicle-maintenance services has resulted in consumer confusion as to the source of the services. Compl. ¶¶ 52-59.

In deciding this Motion to Dismiss, this Court must accept all these factual allegations as true and draw all reasonable inferences in favor of Plaintiffs. In so doing, Plaintiffs have far exceeded the plausibility standard required to survive Defendants' Motion to Dismiss Plaintiffs' direct infringement claims under federal and state trademark law.

Moreover, the facts pled here are readily distinguished from the cases on which Defendants rely for dismissal, which relate to web hosting and online retail store services and are far from instructive. Unlike in *1-800 Contacts, Inc.*, Defendants authorize and permit their service station licensees to use the Valvoline Marks to promote vehicle-maintenance services, and Defendants provide such signage through Defendants' own website. *See Rescuecom Corp. v. Google*, 562 F.3d 123, 129 (2d Cir 2009) (distinguishing *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005) because the defendant in *Rescuecom* was displaying, offering and selling the mark to advertising customers); Compl. ¶¶ 35-41. Similarly, the facts here are readily

16

distinguished from those alleged by a pro se plaintiff against dozens of online platforms in *Lopez*. In *Lopez*, the Court found the allegations did not contain any specific facts to suggest any online platform ever used any of the plaintiff's trademarks. *Lopez v. Bonanza.com, Inc. et al.*, No. 17-CV-8493(LAP), 2019 WL 5199431, *8-9 (S.D.N.Y. Sep. 30, 2019). [3] Here, Plaintiffs specifically plead that Defendants authorize their licensees to use the Valvoline Marks to promote vehicle-maintenance services directly to consumers and provide their licensees with signage bearing the Valvoline Marks to explicitly promote vehicle-maintenance services. Compl. ¶¶ 35-41. Plaintiffs also specifically plead that Defendants exercise control over their service station licensees through the Proudly Pouring Program. In short, Plaintiffs have plausibly stated a claim for enforcing their trademark rights against the service station licensor, Defendants, for direct infringement of Plaintiffs' trademarks. *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F.Supp.2d 569, 574 (S.D.N.Y 2013) (denying the defendants' motion to dismiss because it was not the plaintiff's "burden to plead the actual exercise of control in the complaint").

Lastly, Defendants contention that Plaintiffs' trademark claim fails because the "provision of signs to [Defendants'] licensees is within [Defendants] Field of Use" under the Brand Agreement requires a perverse interpretation of the Brand Agreement. While Defendants may be

---

[3] *Car-Freshner Corp.* is another web hosting platform case where the platform was not found liable for direct infringement for posts created by third parties that is readily distinguished from the facts here. *Car-Freshner Corp. v. Metal Platforms, Inc.*, No. No. 22-CV-1305(MAD)(ML), 2023 WL 7325109, *20 (N.D.N.Y. Nov. 7, 2023). While the court found *Meta* has no control over the posts of its Facebook Marketplace users, Defendants here not only control use of the Valvoline Marks by their licensee service stations, Defendants also provide the very signage that explicitly promotes vehicle-maintenance services using the Valvoline Marks. *Id*. *Tesla Wall Sys., LLC* is also inapposite as it is neither factually nor legally analogous to the instant matter. *Tesla Wall Sys., LLC v. Related Cos., L.P.,* No. 17-CV-5966(JSR), 2017 WL 6507110, *3 (S.D.N.Y. Dec. 18, 2017). The court found Tesla's claim had nothing to do with Related's use of Tesla's trademark and was more akin to a conversion claim against Related for misrepresenting to a third-party a right to receive monies allegedly owed to Tesla. *Id.*

within their rights under the Brand Agreement to provide signage to their customers that promote Defendants' oil products, Defendants have no right under the Brand Agreement to provide signage to their customers that promote vehicle-maintenance services directly to consumers. Notably, none of Defendants' signage reproduced in the Complaint makes any mention of products. Compl. ¶ 41. Rather, Defendants' signage bears the Valvoline Marks and explicitly promotes vehicle-maintenance services to consumers, which falls squarely within Plaintiffs' Retail Services Field of Use, e.g. SERVICES, OIL CHANGE, DRIVE THRU OIL CHANGE, STAY IN YOUR CAR OIL CHANGE. Compl. ¶ 41. To permit Defendants to provide such signage to its service center licensees would render the Brand Agreement effectively meaningless.

### ii.    Co-Ownership Principles Do Not Apply Here

Second, Defendants' co-ownership argument does not apply here. Defendants' argument is predicated on a mischaracterization of the parties' respective rights in the Valvoline Marks. The parties are not co-owners of the Valvoline Marks for vehicle-maintenance services in the United States—those rights are solely and exclusively owned by Plaintiffs as reflected in Plaintiffs' federal registrations of the Valvoline Marks in Class 37. Compl. ¶¶ 23, Exs. B-D. Moreover, the Brand Agreement specifically denotes the "Owner Post Closing" of all the Valvoline Marks as either Plaintiffs or Defendants, and Plaintiffs are the sole and exclusive owner of Valvoline Marks for use in connection with vehicle-maintenance services in the United States. Compl., Ex. A. To be clear, there is no overlap in ownership; the Valvoline Marks asserted by Plaintiffs in this action are independent marks covering specific services distinct from the marks owned by Defendants.

The cases cited by Defendants, none of which are from this District, are inapposite and factually distinct from the instant matter because (a) the parties in those cases were joint owners of the same registration(s) (not the case here), and (b) the parties in those cases did not have a contractual agreement that governs the terms of use of the trademark at issue (not the case here).

18

*See Reed v. Marshall*, 699 F. Supp.3d 563, 569 (S.D. Tex. 2023) (the registrants of the mark at issue were identified as the plaintiff and the two defendants); *Derminer v. Kramer*, 406 F. Supp. 2d 756, 759 (E.D. Mich. 2005) (addressing the question, "can an owner of a trademark sue his co-owner for trademark dilution under the Lanham Act, *absent* an agreement limiting his co-owner's rights to use the mark?"); *Puri v. Yogi Bhajan Administrative Trust*, No. 11-CV-9503(FMO), 2015 WL 12684464, *11 (C.D. Cal. Oct. 30, 2015) (noting the parties were beneficiaries of a trust under which they each owned 50% interest in the IP assets of the trust and there was no agreement governing use of the marks or the duties owed by the parties to each other.).

Here, Defendants have no ownership right in or to the Valvoline Marks in Class 37 (vehicle-maintenance services). Those registrations are solely and exclusively owned by Plaintiffs. Compl. ¶ 23. Additionally, Plaintiffs and Defendants entered the Brand Agreement specifying who owns the Valvoline Marks registered in Class 37 for vehicle-maintenance services (Plaintiffs, not Defendants) and who owns Valvoline Marks in the Retail Services Field of Use (Plaintiffs, not Defendants). Further, the Brand Agreement specifically proscribes Defendants' right (and the right of Defendants' licensees) to use the Valvoline Marks in Plaintiffs' Retail Services Field of Use. Compl. ¶¶ 21-32, Ex. A; *see Durango Herald, Inc. v. Riddle*, 719 F.Supp. 941, 943, 945 (D. Col. 1988) (enjoining the parties from infringement even where the parties were members of a joint venture that had "an indivisible interest in its trademarks and consumer good will" because the parties had "reciprocal duties not to use the primary asset of the [] joint venture for their individual benefit in a manner which burdens or injures only the other party").

Lastly, under the Brand Agreement, "[t]he Parties agree that they shall, and shall cause their respective Affiliates to (a) use the Valvoline Marks in accordance with all applicable Laws…." Compl. ¶ 32, Ex. A, §5(g). Thus, even if the parties were co-owners of the registered

19

Valvoline Marks in Class 37, which they are not, the Brand Agreement precludes Defendants from violating Plaintiffs' registered rights in the Valvoline Marks in Class 37 under the Lanham Act. Defendants have not met their burden to show that the parties are co-owners of the Valvoline Marks or that the Brand Agreement precludes Plaintiffs from bringing an action to enforce Plaintiffs' federally registered trademark rights in the Valvoline Marks.

### iii. In the Alternative, Plaintiffs Should Be Granted Leave to Amend to Plead Contributory Infringement

As explained above, Plaintiffs properly plead direct trademark infringement. However, if this Court finds they have not, Plaintiffs respectfully request leave to amend their Complaint to plead contributory trademark infringement. Fed.R.Civ.P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "'When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.'" *Luv N' Care Ltd. v. Toys "R" Us, Inc.*, No. 12-CV-0228(SAS), 2012 WL 5265723, *2 (S.D.N.Y. Oct. 24, 2012) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)). "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (finding an amendment did not unfairly surprise another party or impede fair prosecution of their claims). Here, there has been no undue delay, Plaintiffs do not make this request in bad faith, and Defendants would not be prejudiced because discovery has yet to commence.

Moreover, an amended complaint would not be futile. A proposed amended complaint is futile when it fails to state a claim." *Contractual Obligation Productions, LLC v. AMC Networks, Inc.*, No. 04-CV-2867(BSJ)(HBP), 2006 WL 6217754, *2 (S.D.N.Y. Mar. 31, 2006) (granting the plaintiff's motion to file an amended complaint for certain claims). When reviewing a motion to

20

amend, the court "'must accept as true all factual allegations in the [amended] complaint and draw inferences from these allegations in the light most favorable to the plaintiff.'" *Id.* (quoting *Senich v. American-Republican, Inc.*, 215 F.R.D. 40, 41-42 (D. Conn. 2003)).  Plaintiffs could succeed on a claim for contributory infringement because a defendant may become contributorily liable in one of two ways: "'first, if the service provider 'intentionally induces another to infringe a trademark,' and second, if the service provider 'continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement.'" *Slep-Tone Ent. Corp.*, 193 F.Supp.3d at 297 (internal citations omitted).  In *Slep-Tone Ent. Corp.*, the court found the defendant liable for contributory infringement because, once the plaintiff sent a letter to it alerting it that its licensee was misusing the marks, the defendant knew or had reason to know its licensee, over who it exercised control, was infringing on the plaintiff's trademarks. *Id*. at 298.  Likewise, prior to commencing this action, Plaintiffs alerted Defendants several times as to the infringing activity of Defendants and Defendants' licensees.  Yet, Defendants continue to provide thier licensees with the ability to misuse Plaintiffs' marks with full knowledge that their licensees are engaging in trademark infringement.  In short, Defendants have knowingly permitted their licensees to misuse the Valvoline Marks in violation of the Lanham Act.  Thus, if this Court dismisses Plaintiffs' direct infringement claims, Plaintiffs request the ability to amend their complaint to plead contributory infringement.

## D.    Plaintiffs Properly Plead False Advertising

Plaintiffs properly plead false advertising, alleging the use of the Valvoline Marks by Defendants and their licensees to advertise the licensees' vehicle service stations has misled and confused consumers.  A claim of false advertising may be based on the theory that the "'advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (quoting *Time Warner Cable, Inc.*

*v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)) (noting it was unable to affirm the lower court's conclusion that the ads in question were not likely to mislead or confuse consumers based on the record). The "'injuries redressed in false advertising cases are the result of public deception.'" *Id.* (quoting *Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992)). Plaintiffs plead as much.

As an initial matter, "materiality is generally a question of fact" poorly suited to a determination at the pleadings stage.'" *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F.Supp.3d 501, 518 (S.D.N.Y. 2015) (finding that although the plaintiff "has not provided the context for the allegedly false advertisement" the claim should not be dismissed because it was too early in the proceedings to consider the materiality question). But materiality as required under the Lanham Act can be pled by showing that the defendants' misrepresentations were "were likely to influence purchasing decisions and were therefore material to Plaintiff's claim." *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 71 (2d Cir. 2016) (holding the district court did not err in finding the materiality of the defendant's false advertising). In *Church & Dwight Co.,* the Second Circuit specifically noted that while "the materiality of the falsity and the likelihood of injury to the plaintiff resulting from the defendant's falsity are separate essential elements, in many cases the evidence and the findings by the court that a plaintiff has been injured or is likely to suffer injury will satisfy the materiality standard." *Id.* at 70. Here, Plaintiffs plead that use of the Valvoline Marks by Defendants and their licensees to promote vehicle-maintenance services to consumers has resulted in consumer confusion as to the source of the services and has damaged Plaintiffs when consumers choose to receive oil change services from Defendants' service center licensees (rather than Plaintiffs) under the mistaken belief such consumers are receiving oil changes from Plaintiffs. Compl. ¶¶ 54-57.

22

Unlike in *Lehrman v. Lovo, Inc.*, 24-CV-3770(JPO), 2025 WL 1902547, *14 (S.D.N.Y. July 10, 2025) cited by Defendants, where the plaintiff was not alleging false advertising as to a registered mark and did not identify any branding that "leaves an impression on the listener or viewer that conflicts with reality," here, Plaintiffs plead Defendants are permitting licensees to use the Valvoline Marks in a manner that will leave consumers confused as to the source of the services offered. Compl. ¶¶ 38, 49-63. Plaintiffs specifically plead that use of the Valvoline Marks by Defendants' licensees to advertise services offered at their service stations causes confusion with consumers as to the source of the maintenance services provided by those service stations. Compl. ¶¶ 38, 44-47, 53-58. Further, Plaintiffs allege this has resulted in injury to Plaintiffs. Compl. ¶¶ 53-59. Even if the Court finds that Plaintiffs have not specifically pled materiality, the Court can plausibly infer materiality at the pleadings stage where confusion as to source or sponsorship is alleged, which Plaintiffs have alleged here. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (false advertising actionable where misrepresentations likely to influence purchasing decisions). Plaintiffs specifically plead that consumers are choosing to receive vehicle-maintenance services from Defendants' licensees under the *mistaken* belief that they are receiving vehicle-maintenance services from Plaintiffs. Compl. ¶¶ 52-57. Plaintiffs plausibly plead false advertising, and Defendants' Motion to Dismiss should be denied.

**E.    The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

Defendants contend the Court should decline to exercise supplemental jurisdiction over Plaintiffs' breach of contract and New York common law trademark infringement claims. Defendants' contention is not based on whether Plaintiffs' state law claims are so related to Plaintiffs' Lanham Act claims but rather is predicated entirely on Defendants' contention that the Court should dismiss Plaintiffs' Lanham Act claims. As discussed in Sections III.B. - III.D. above,

23

the Court should not dismiss Plaintiffs' Lanham Act claims, which fall within the original jurisdiction of this Court. And the Court should exercise supplemental jurisdiction over Plaintiffs' state law claims, which form part of the same case or controversy.

Even if the Court dismisses Plaintiffs' Lanham Act claims, which it should not, the Court may still maintain supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367 is a permissive statute and permits courts to maintain supplemental jurisdiction over a claim even if all claims over which it has original jurisdiction are dismissed. *See* 28 U.S.C. § 1367(c)(3). Courts in the Second Circuit have routinely maintained jurisdiction over state law claims even after dismissing all claims over which they had original jurisdiction. *Mizuna, Ltd. v. Crossland Federal Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996) (finding "[t]hough the court also had the *discretion* to remand the case to state court,…it properly exercised its discretion to retain jurisdiction") (emphasis in the original); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (finding the lower court did not abuse its discretion by exercising supplemental jurisdiction); *Philatelic Foundation v. Kaplan*, 647 F.Supp. 1344, 1348 (S.D.N.Y 1986) (noting "[a]lthough no federal cause remains, the state causes will be retained under the court's ancillary jurisdiction" because prior to the defendant's motion for judgment on the pleadings "the state law claims, deriving from the same nucleus of operative fact as the federal claim, were clearly within this court's jurisdiction").

Defendants emphasize in their Motion to Dismiss that the state law claims pled by Plaintiffs are duplicative and "'virtually identical'" to the claims under the Lanham Act. MTD, fn. 11. A federal court would be properly suited to adjudicate these state law claims given the overlap in fact and law with the federal claims over which the Court has original jurisdiction. Accordingly, this Court should exercise its discretion and maintain supplemental jurisdiction even if Plaintiffs' claims under the Lanham Act are dismissed.

24

F.      **Plaintiffs Prayer for Relief is Proper**

Defendants ask this Court to strike Plaintiffs' demands for relief for anything other than actual compensatory damages arising from a breach of the Brand Agreement. However, Plaintiffs properly plead trademark infringement under the Lanham Act, and Plaintiffs properly demand the statutory relief the Lanham Act provides for infringement of Plaintiffs' federally registered trademarks.

The Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing," and that a motion to strike under Rule 12(f) should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893. To prevail on a 12(f) motion, the moving party must demonstrate that: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe*, 151 F. Supp. at 510. Defendants have made no such showing here.

Plaintiffs' Prayer for Relief does not fall within any of the classifications covered by Rule 12(f): "(1) an insufficient defense; (2) [a] redundant [matter]; (3) [an] immaterial [matter]; (4) [an] impertinent [matter]; or (5) [a] scandalous [matter]." Fed. R. Civ. P. 12(f). Plaintiffs' claim for trademark infringement relief is clearly not an insufficient defense. Plaintiffs' claim for trademark infringement relief is not redundant; it does not appear anywhere else in the Complaint. Plaintiffs' claim for trademark infringement relief is not immaterial or impertinent—whether the relief is recoverable relates directly to the alleged harm, trademark infringement. Plaintiffs' claim for trademark infringement relief itself cannot be classified as scandalous.

Defendants argue Plaintiffs' demands for relief are unavailable as a matter of law.[4] However, trademark owners routinely recover damages for both trademark infringement and breach of contract. *See Edward J. Sweeney & Sons*, 637 F.2d at 123; *Masters*, 631 F.3d at 470–71; *Watec*, 403 F.3d at 651–52; *Babbit*, 38 F.3d at 1178. As discussed in Section III. B. above, Plaintiffs properly plead that Defendants committed two legal wrongs: (1) Defendants caused customer confusion and engaged in unfair competition in violation of the Lanham Act (and state trademark laws) by using without authorization Plaintiffs' federally registered trademarks in connection with vehicle-maintenance services,[5] and (2) Defendants have gone back on their word in the Brand Agreement in breach of a contract. Plaintiffs are entitled to recover for both wrongs, and the Court should deny Defendants' motion to strike Plaintiffs' prayer for relief.

## V.    CONCLUSION

Plaintiffs respectfully ask that this Court deny Defendants' Motion to Dismiss, Motion to Decline Supplemental Jurisdiction, and Motion to Strike. Alternatively, to the extent the Court

---

[4] The cases cited by Defendants are inapposite. *Indyke* involved dismissal of a prayer for punitive damages sought by a victim of sexual abuse against the estate of Jeffrey Epstein under the New York Child Victims Act where punitive relief was unavailable as a matter of law. *See Doe v. Indyke*, 457 F. Supp. 3d 278, 289 (S.D.N.Y. 2020). *Protex* involved granting a motion to strike punitive damages arising from a claim for fraud because the predicate fraud was dismissed. *Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 254 (S.D.N.Y. 2024). Plaintiffs do not seek punitive damages here. In *Philadelphia Stock*, the court determined the defendant could not be the prevailing party on a withdrawn copyright infringement claim and would not be entitled to attorney's fees under the Copyright Act, which is neither analogous nor instructive here. *Philadelphia Stock Exch. v. Intl. Sec. Exch., Inc.*, No. 05 Civ. 5390 (NRB), 2005 WL 2923519, at *2-3 (S.D.N.Y. Nov. 2, 2005). In *Clarex* the plaintiff improperly sought damages based on the current market value of warrants at issue rather than the market value at the time of the alleged breach, which has nothing to do with the instant motion. *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 7908 (PAE), 2013 WL 2631043, at *9 (S.D.N.Y. June 11, 2013).

[5] Plaintiffs properly demand the statutory remedies for trademark infringement available under the Lanham Act: injunctive relief (15 U.S.C. § 1116), affirmative relief (15 U.S.C. § 1118), and monetary relief, including profits, actual damages, costs, and fees (15 U.S.C. §§ 1114, 1117).

26

finds Plaintiffs' claims deficient in any respect, Plaintiffs respectfully request leave to amend the

Complaint to cure any deficiencies.


Dated: October 17, 2025
     New York, New York          Respectfully submitted,



            **K&L GATES LLP**

            ***/s/ Benjamin I. Rubinstein***
            Benjamin I. Rubinstein, Esq.
            benjamin.rubinstein@klgates.com
            599 Lexington Avenue
            New York, NY 10022
            P: 973-848-4140
            F: 973-848-4001

            R. Gregory Parker, Esq.
            greg.parker@klgates.com
            501 Commerce Street, Suite 1500
            Nashville, Tennessee 37203
            P: 615-780-6751

            *Attorneys for Plaintiffs*
            *Valvoline LLC, Valvoline Licensing and Intellectual*
            *Property LLC and Valvoline Inc.*

## CERTIFICATE OF COMPLIANCE

The Brief for Plaintiffs Valvoline LLC, Valvoline Licensing and Intellectual Property LLC, and Valvoline Inc. complies with the type-volume limitations set forth in Local Civil Rule 7.1(c). The relevant portions of Plaintiffs' Opposition including footnotes, contains 8,553 words, as determined by Microsoft Word for Microsoft 365.

*/s/ Benjamin I. Rubinstein*
Benjamin I. Rubinstein, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Civil Rule 6.1 on October 17, 2025.  As of this date, counsel of record has consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Civil Rule 5.2.

*/s/ Benjamin I. Rubinstein*
Benjamin I. Rubinstein, Esq.